JAMES F. WADE *et al. v.* WATT, NOBLE & MOBLEY.

1. VENDITIONI EXPONAS: EXECUTION: EMANCIPATION OF SLAVES.—When an execution was levied in 1861 on slaves, their emancipation before a sale under the execution is an amotion of the levy, and dispenses with the necessity of a venditioni exponas.

2. EXECUTION: LEVY ON PERSONAL PROPERTY: PRIMA FACIE EVIDENCE OF SATISFACTION.—The levy of an execution on personal property is primâ facie evidence of satisfaction, but this presumption of satisfaction may be rebutted by showing that the property has not been legally disposed of, or that the defendant has not been deprived of it by the levy.

3. SAME: CASE IN JUDGMENT.—An execution in favor of Watt, Noble & Mobley was levied, in 1861, on certain slaves of the defendant, James F. Wade, which, if sold, would have been sufficient to have satisfied the execution. The slaves remained in the possession of Wade after the levy, at his solicitation, and for his accommodation. After the emancipation of the slaves, in 1866, a second execution was issued, which Wade moved to quash, because of the presumption of satisfaction from the levy in 1861. Held— That under the circumstances, the levy was not a satisfaction of the execution.

4. EXECUTION: LEVY: SHERIFF: TITLE TO PROPERTY LEVIED ON.—The levy of an execution on personal property vests the sheriff, or other officer making the levy, with a special property in the thing levied on: the title of the defendant in execution can be absolutely divested only by a sale by the officer making the levy.

5. SHERIFF: EXECUTION: LEVY OF, AND DESTRUCTION OF PROPERTY.— Where the sheriff levies an execution on personal property, and at the solicitation of the defendant permits it to remain in his possession, and the property is afterwards destroyed, the loss falls upon the defendant in execution, and not on the sheriff.

6. EXECUTION: DEATH OF CODEFENDANT: EFFECT OF FAILURE TO NOTE DEATH.—The statute, Rev. Code, 526, art. 269, requires that, if one or more defendants shall have died before the issuance of an execution, and no revivor has been had, the fact of the death shall be noted on the writ, and the property of the survivors only shall be liable to the execution. The object of the statute was to protect the property of the deceased defendant; and though such death was not noted on the execution, the property of the survivors would be liable.

ERROR to Circuit Court of Holmes county.    Hon. J. A. P. Campbell, judge.

Wade et al. *v.* Watt, Noble & Mobley.

*Povall & Allen* for plaintiffs in error.

1. A levy on personal property changes the property, and is a satisfaction of the execution to the extent of the value. A levy is presumed to be a sufficient one. 5 How. (Miss.), 629; 7 ib. 393; 34 Miss. 293; 24 Miss. 633; 14 S. & M. 56; 23 Wend. 490.

2. That though the negroes remained in the possession of Wade, he held them as the bailee of the sheriff, and by request, and the levy remained in full force. 1 Spencer, 56; 4 Harrison, 166; 3 Hill, S. C. 276; 28 Miss. 283; Story on Bailment, §§ 124–136; 23 Wend. 490.

3. That defendants in error, having acquiesced for five years in the satisfaction occasioned by the first levy, will not now be allowed to say that the property was never sold, but is now free, and that there is no satisfaction of the judgment. 8 S. & M. 497; 10 S. & M. 581.

4. That Wade, as bailee of the sheriff, had the right to work the negroes. He told the sheriff, if left with him, he would work them. Story on Bailment, § 89.

5. That the levy was never released; there was no restitution of the property; Wade was but the bailee of the sheriff, having no property in the slaves, but a mere naked custody; no right to sell or dispose of them; and was as much deprived of his property by the levy as if they had been placed in the hands of a third person. 4 Harrison, N. J. R. 166; 3 Hill, S. C. 283; Story on Bailment, § 133.

*J. M. Dyer* for defendants in error.

1. That the failure to note the death of Walton on the execution cannot avail plaintiffs in error. As to the survivors, a scire facias was not necessary. *Helm* v. *Davis*, 3 S. & M. 17, 37.

The execution had to be issued against all the defendants, the dead as well as the living, so that it might correspond with the judgment. 2 Tidd, 1029; 2 Saund. R. 72, and note.

The object of the statute requiring death of the defendant to be noted on the execution, was to prevent a levy upon his prop--

erty; no levy was made, and the purpose of the statute has been accomplished.

2. The emancipation of the slaves was an amotion of the levy, and a " vendi " was unnecessary.

3. A levy upon personal property is prim facie evidence of satisfaction, but this presumption is subject to explanation that actual satisfaction had not been obtained.    *Bibb* v. *Jones,* 7 How. Miss. 397; 10 S. & M. 35; 4 S. & M. 135; 2 Ib. 428; 2 Dev. 341; 4 Ib. 357.

HANDY, C.J., delivered the opinion of the court.

This was a motion in the Holmes Circuit Court by the plaintiffs in error, at May term, 1866, to quash a writ of fieri facias in favor of the defendants in error, against James B. Walton and the plaintiffs in error, Wade and Wright, issued on the 26th March, 1866, and returnable to said May term.   The grounds of the motion are :—1. That Walton, one of the defendants, was dead at the date of the execution, and the judgment had not been revived as to him, nor his death noted on the execution.    2. That an execution had been issued on the judgment in December, 1860, returnable to May term, 1861, which was levied in April, 1861, on three slaves, the property of Wade, and sufficient to satisfy that execution, and there had been no legal disposition of that levy, and that said levy was a satisfaction of the judgment.

On the hearing of the motion, the plaintiffs in error read the execution of December, 1860, and the sheriff's return on it in these words:—"Executed April 23, 1861, by levying on the following negro slaves, to wit, Nella, Lucy, and Harriet.   Jas. H. Rogers, sheriff, by deputy ;" and the execution of March, 1866, showing a levy on certain real and personal property of the defendant Wade, not including the slaves levied on under the previous execution.

It was then proved that the slaves levied on in April, 1861, were of value sufficient to pay the execution, and that they remained on the plantation of Wade after the levy ; that one of them remained there until the summer of 1865, when she left, and that the other two have ever since continued there.

They proved by Richardson, the deputy sheriff who levied the execution in 1861, that after he levied on the slaves mentioned, he left them with Wade till called for by the sheriff for sale; that he left them with Wade, knowing that he was solvent, and that he could get them when called for; and that he left them with Wade as his agent and for witness's convenience; that the slaves were never called for or delivered to the sheriff, nor sold by him.

Wade testified that after the slaves were levied on, he asked the deputy sheriff what he was going to do with them, and he replied that he would leave them there, and Wade replied that, if he did, he would work them; that they were left there, and he held them subject to the order of the sheriff; that he worked them from the time of the levy, and has never accounted for their hire or labor; that they were assessed as his property, and he paid the taxes on them up to the time of the surrender of the Confederate army, and all that time had them in his possession.

The plaintiffs in execution then introduced Rogers, the sheriff at the time said levy was made, who testified that Wade wanted to raise the money and not to have the negroes sold, and was averse to having them sold, but that witness would have sold them at the May term, 1861, had it not been for some conversation which Walton and Wright had with Watt, one of the plaintiffs in the execution; and that Watt told witness to "hold on until he saw him again, and not to press the boys;" that the levy was never released. Watt, one of the plaintiffs in the execution, testified that he had a conversation with Walton and Wright in the spring of 1861, at which he thought Wade was present, in relation to the indebtedness of the defendants; that he could not state positively, but thought that Wade was to ship him cotton to pay his part of the debt. Wade, in rebuttal, testified that he never agreed to ship Watt any cotton; but that he wanted to get the money if he could, and not to have the negroes sold; that he had no recollection of having any conversation with Watt about the matter. Both of the last-named witnesses state that the levy of 1861 was not released. There was some other testimony, but it is not material.

The court overruled the motion, and the case is brought here.

It is conceded that the negroes levied on under the execution in April, 1861, have become free in virtue of the political action of the government of the United States since that time, and were not subject to be taken in execution by the sheriff when the *fieri facias* sought to be quashed was issued. This was an amotion of the levy, and dispenses with the necessity of a writ of *venditioni exponas* in order to dispose of the property levied on, or to show that it could not be sold in satisfaction of the execution. The emancipation of all the slaves in the State was a matter of public policy of the United States, fully established and notorious. To issue an execution in order to seize and sell negroes which had previously been levied on under an execution, or to show that they were not, at the time of issuing the execution, subject to be taken and sold in satisfaction of it, would therefore have been a vain and useless act. Hence, there is no force in the objection, that if any execution could have been properly issued in 1866, it should have been a *venditioni exponas*.

But the main ground of the motion is, that the execution was satisfied by the original levy; and it is now insisted, in behalf of the plaintiffs in error, that, by that levy, Wade was divested of his property in the slaves, which thenceforth became the property of the sheriff for the benefit of the plaintiffs, notwithstanding the slaves remained in the possession of Wade, who became the mere bailee of the sheriff, who had the right to take them from his possession at any time after the levy; and that this divestiture of property, under the circumstances, was in law a satisfaction of the execution.

In support of this view, several cases in this court are relied on, and especially *Kershaw* v. *Merchants' Bank of New York*, 7 How. 393; and *Brown* v. *Kidd*, 34 Miss. 293.

In the former of these cases, the court uses the following language, which is much relied on by counsel: " A levy on a sufficient amount of property is a satisfaction of the execution. By the levy the property is changed and the defendant is discharged, whether the sheriff wastes the property or not. No new execution can issue after such levy, and if it should, it will

be quashed for irregularity. . . . . . . To take a defendant's property is as much a satisfaction as to take his money, and whilst the levy continues, the plaintiff's recourse against the defendant is at an end."

But other parts of the opinion in that case show that the court meant that such a levy was only *primâ facie* a satisfaction. It was a mere case of *primâ facie* satisfaction, that the court had before it; and the levy was held to be a satisfaction only in case the presumption of satisfaction arising from it was not removed by showing that the property levied on had been legally disposed of, or that the defendant had not been deprived of it by the levy. For, says the court, "if the levy should be legally removed, then, of course, the parties are restored to their original rights and liabilities."

But this is more fully stated in the second case referred to. "The rule is too well settled," says the court, "that a levy upon personal property is *primâ facie* a satisfaction of the execution levied, to admit of controversy. And the reason of the rule is, that, by the levy, *the defendant is in law deprived of his property*, which, *until the contrary is made to appear, is presumed to have been disposed of by the sheriff;* and whether it is applied by the sheriff to the payment of the execution or not, it operates as a satisfaction in law. This rule . . . . operates as a discharge of the defendant from the judgment, *unless the presumption of satisfaction be destroyed by sufficient proof.*" And all the cases in this court referred to hold the same rule.

Such a levy, then, is but *primâ facie* a satisfaction, proceeding upon the reason that, in virtue of it, the defendant has been deprived of his property levied on. And the question, therefore, in this case is, whether the defendant has been deprived of the slaves by reason of the levy.

It appears, by the evidence, that the negroes were not taken from his possession after the levy, but continued there as before it was made, he having the full use and benefit of them ; that he did not wish them to be sold under the execution, but wished to raise the money to pay it otherwise, and consented to keep possession of them and to have the benefit of their labor. This

appears to have been consented to by the sheriff and·acquiesced in by the plaintiffs in the execution; and it was continued until the negroes became free by operation of law.

It is manifest that Wade was deprived of nothing by the levy except the mere nominal property in the negroes. He had the use and possession of them, for his own benefit, as fully as if the levy had never been made; and they were continued in his possession for that purpose, and with his entire consent. He was averse to their being sold by the sheriff, and it appears that the plaintiffs were willing to indulge him. Had it not been for his convenience, the negroes would have been sold shortly after the levy. It was therefore for his accommodation. that they were not sold, and that they remained in his possession and use until they became· free by law. Not only was he deprived of no substantial benefit by the levy, but it was for his convenience and by his desire that they were not sold, but remained in his use and possession until the levy was discharged by operation of law. Suppose that during the interim the negroes ·had died, could it be pretended that the execution would have been satisfied? Certainly not, because the loss would be in consequence of his own acts; and the rule is, that where a loss must fall on one of two parties, he who has been the cause of it must bear it. By retaining the possession and use of the property, and not having it taken and sold by the sheriff, he took the hazard of all casualties and misfortunes by which it might be lost or destroyed; and the loss, which has been the result of his possession, should not fall upon the plaintiffs in the execution, who received no benefit from the property remaining unsold.

It is immaterial to the merits of this question, that Wade occupied the position of a bailee of the property after the levy, and that the sheriff could at any time have asserted his right of property in the negroes against him. For he was deprived of nothing by the levy, and had the full use and benefit of the property by his own consent; and in consequence of that, the negroes were not applied to the satisfaction of the execution, but were discharged from its operation by emancipation.

It is said that, by virtue of the levy, the negroes became the

property of the sheriff for the use of the plaintiffs in execution, and were so at the time of their emancipation; and, therefore, that the loss should fall on the plaintiffs. But this was a mere special property for the purposes of execution, such as would enable him to maintain trespass or trover against any one who might take possession of them. Watson on Sheriff, 191. The title of the defendant can only be absolutely divested by sale of the sheriff; and whilst the property remains in the beneficial use and possession of the defendant, by his own consent, it cannot with any propriety be said that his title was divested and transferred to the sheriff. The injury which has resulted to the defendant by the emancipation of the slaves, is in consequence of his own act in retaining possession of the property, and in not submitting to a sale when the levy was made. It was for his own benefit, and by his own consent, that this was done; and the misfortune which caused the loss of the property should fall on him, and not upon the plaintiffs in the execution. It comes within the maxim, *volenti non fit injuria*.

The true rule upon the subject of satisfaction of an execution by reason of a levy on personal property is thus stated by the Supreme Court of North Carolina in *ex parte King*, 2 Dev. 341 : " The seizure of personal property under a *fi. fa.* is constructively a discharge of the debt. But if the defendant were never deprived of his property by the sheriff, or if he were and got it back, either with or without the consent of the sheriff, it would be monstrous to say the defendant had paid his debt. The levy on property is not actual payment, which the law always aims at. It is only constructively so, to prevent wrong. It is deemed payment in those cases where, if it were not, the defendant would be twice deprived of his property on the same judgment. In all other instances it is no payment." And this rule is adopted by this court in *Banks* v. *Evans*, 10 S. & M. 35–57.

The only remaining ground of the motion is, that the execution was issued without noting on the writ the death of the defendant Walton, as required by Rev. Code, 526, art. 269.

This statute appears to have in view the protection of the

rights of the deceased defendant, but to have no application to the codefendants who are living.    In case of the death of one of them before the issuance of the writ, the provision is, that his death shall be noted on it, to the end that his property shall not be taken in execution under it.    But the property of the survivors is liable, without such noting, because the provision has no reference to them.    Their property is liable to execution in the same way as if their codefendant had been alive when the writ was issued.

Let the judgment be affirmed.