## T. S. WRIGHT VS. WATT, NOBLE & MOBLEY.

1. EXECUTION: *Levy on personal property.* Prima facie *evidence of satisfaction.*
When an execution is levied on a sufficient amount of personal property it is *prima facie* evidence of satisfaction, but the presumption of satisfaction thus raised may be rebutted by showing that the property was not legally disposed of, or that the defendant has not been deprived of the property by the levy. It is payment if the sheriff wastes the goods, after seizure, of sufficient value to pay the debt.

2. PRINCIPAL AND SURETY: *Release of surety.*
Indulgence or non-action, though in the meantime the principal should become insolvent, unaccompanied by any act of the creditor whereby the hazard is increased, will not discharge the surety; nor the failure to issue execution, or to point out property, or, if the execution be levied on the principal's property, the failure to make up an issue with a claimant who has replevied; nor the failure to enroll a judgment on a forfeited forthcoming bond, whereby a junior judgment obtained priority. But if indulgence is granted for a definite time, pursuant to an agreement supported by a valuable consideration, so as to tie up the hands of the creditor, and the surety does not consent to such an agreement, he will be exonerated from liability.

APPEAL from the Chancery Court of *Holmes* County.

Hon. THOMAS WALTON, Chancellor.

The facts in the case are fully stated in the opinion of the court (also in 41 Miss., 248).

It is assigned for error as follows:

1. Because the bill charges, and the answer admits, that complainant was only surety on the notes on which judgment was confessed, May 7, 1860, and under which execution was levied April 23, 1861, on property of the principal sufficient to satisfy the same, which property was not sold, nor was there any legal *amotion* of the levy.

2. Because complainant properly made and filed an affidavit that he was only surety on said notes, and on April 23, 1861, a levy was made as above, but no sale made or *amotion* of levy, nor did T. S. Wright consent to a non-sale of the property.

*Allen & Dyson,* for appellant.

*Frank Johnston,* for appellees.

SIMRALL, C. J., delivered the opinion of the court.

F. S. Wright brought his bill in chancery against J. M. Watt and others, to obtain a perpetual injunction against the collection of a judgment which had been confessed by Wade, Walton, and the complainant, in favor of Watt, Noble & Mobley, on the 7th of May, 1860.

The complainant alleges that he was surety on the notes, the foundation of the judgment, which was well known to Watt, the managing member of the firm; that he filed an affidavit, under the statute, in the papers of the cause, of his suretyship; that on the 23d of April, 1861, the sheriff levied an execution on three slaves, the property of Wade, sufficient in value to pay the debt, at which time Wade had other property ample to pay the debt.

The further allegations are that the sheriff would have sold the slaves but for instructions received from Watt, after the levy, "to hold and not press the *boys* until he (Watt) saw him (the sheriff)." Watt supposed that he had made some agreement with Walton and Wade to ship cotton to Watt, Noble & Mobley, factors and commission merchants, at New Orleans. Part of the judgment had been made by a sale of Wade's property, which reduced him to insolvency, and he had become a bankrupt. Walton died insolvent. The sheriff was about to make the balance of the debt out of complainant. The further allegation material to be noticed is that the arrest of the sale of the slaves, in 1861, and also the agreement about the shipment of cotton, were without the knowledge and consent of the complainant.

The answer of Watt (who had become the purchaser of the judgment at bankrupt sale) denied personal knowledge of the affidavit of Wright of his suretyship, earlier than 1866, when it was brought to his notice on the trial of a motion, in the circuit court of Holmes county, to enter satisfaction of the judgment. Defendant had no personal knowledge of the levy, nor said or did anything that released the levy, or suspended the execution for any definite time; denies that the sale or

execution was held up by reason of any agreement. Wright never pressed the collection of the judgment. The proof does not sustain these important allegations of the bill so as to overcome the defendants' denials.

It was abundantly shown that Wade was not disturbed in his possession of the slaves by the levy—they were left by the sheriff in his possession, subject to the sheriff's order—but that Wade continued to control them and enjoy their labor until emancipated.

The case of the complainant stands, in its legal merits and effect, as respects his rights on the levy of 1861, and the conduct of the sheriff in respect thereto.

The complainant claims, as having an important bearing, the benefit of the principle that a levy on sufficient personal property is a satisfaction of the debt. Undoubtedly it is a *prima facie* or presumptive satisfaction, but not conclusively so. The doctrine was very clearly stated when another branch of this case, involving the effect of the levy of 1861 with the attending circumstances, was before our predecessors in Wade et al. *v.* Watt, Noble & Mobley, reported in 41 Miss., 251. Adopting the language of the supreme court of North Carolina, in *Ex parte* King, 2 Dev., 341 : "The seizure of personal property on *fieri facias* is constructively a discharge of the debt. But if the defendant was never deprived of his property by the sheriff, or if he were and got it back, either with or without the consent of the sheriff, it would be monstrous to say the defendant had paid his debt." It is payment if the sheriff wastes goods, after seizure, of sufficient value to pay the debt. If it were not so, the debtor might be deprived of his property twice. Banks *v.* Evans, 10 S. & M., 35.

It was because Wade did not lose his property, but retained and used it, that it was held, on the decision of his writ of error, that the levy did not work a satisfaction of the debt.

The general principle pervading our adjudications is that the creditor must do some positive act, or omit to do something required by law in the particular circumstances, in order

to deprive him of the advantages incident to his judgment. He is not affected by the negligence of the sheriff. Lucas v. Stuart, 3 S. & M., 231; Talbot v. Melton, 9 S. & M., 9; G. G. Bank v. Henderson, 192. Most of the applications of the principle have occurred in conflicts between senior and junior judgment creditors. But it has also been extended to dealings and contracts between the creditors and principal debtor, alleged to be prejudicial to the surety as an interference with his original contract, or exposing him to increased risk and peril. Indulgence or non-action, though in the meantime the principal should become insolvent, unaccompanied with any act of the creditor whereby the hazard is increased, will not discharge the surety. Caruthers v. Dean, 11 S. & M., 178. Nor will the failure of the creditor to present his claim to the administrator of the principal, whereby the debt against his estate was lost. Johnson v. The Bank, etc., 4 S. & M., 165. Nor the failure to issue execution or point out property, or, if the execution be levied on the principal's property, the failure to make up an issue with a claimant who has replevied. Melton v. Howard, 4 Humph., 103. Nor the omission to enroll a judgment on a forfeited forthcoming bond, whereby a junior judgment obtained priority. Pickens v. Finny, 12 S. & M., 468. These are all instances of non-action, and have been held not to discharge the surety.

But if indulgence is granted for a definite time, pursuant to an agreement supported by a valuable consideration, so as to tie up the hands of the creditor, and the surety does not consent to such an arrangement between the creditor and principal debtor, he will be exonerated from liability. Newell v. Hamer, 4 How., 684; McGehee v. Metcalf, 12 S. & M., 53; Pope v. The Bank, 6 ib., 24.

The allegations of the arrangement with Walton and Wade to ship cotton are vague and unsupported by testimony.

There is a class of cases to the effect that the creditor is bound to deal with all collateral securities given him by the principal debtor impartially, and if, by his negligence or im-

proper conduct, they are lost or surrendered, the surety is released, at least to the extent that the securities might have been made available, for the obvious reason that the surety has the right to pay the debt and be subrogated, on payment, to these rights of the creditor. Payne *v.* Commercial Bank, 6 S. & M., 38; Cooper *v.* Wilcox, 2 Dev. & B. Eq., 90. But the surety must be able to refer the loss to the negligence or affirmative act of the creditor. So, too, a valid contract for delay would be, or might be, detrimental to the surety, because it would suspend his right to pay the debt, and would debar him from taking immediate measures to reimburse or secure himself. These principles apply as well to the creditor by judgment as by simple contract.

The reason which underlies all this doctrine, that mere passiveness and non-action will not exonerate the surety, is the right which he has to go forward and pay off the debt, and thereby take the necessary measures for his own security and protection by obtaining the benefit of subrogation to securities, or of reimbursement from the principal. The 65th chapter of the Code of 1857, p. 362, is framed on that policy, and perhaps enlarges the rights of the surety. Making and filing the affidavit provided for in the 2d article—that the affiant has paid the judgment, and was a surety—works by operation of law an assignment of the judgment, with the right to final process to enforce its collection. The judgment is esteemed as unsatisfied for the use of the surety, who is substituted to all the advantages as against the principal debtor which the original creditor had.

There is no act of Watt, Noble & Mobley, or either of them, which suspended the right of the defendant. We have been referred to cases which place the release, by the creditor, of a levy on the personal property of the principal debtor, on very much the same footing as the release of collateral securities, if done without the consent of the surety. Beeson *v.* Beeson, 9 Penn. St., 279. In Sneed's Ex'rs *v.* White, 3 Marsh. J. J., 528, it was said that a stay of execution by the

-creditor, after levy on personal property of the principal, will exonerate the surety if the lien resulting from the levy be extinguished, and it be done without the surety's consent. See, also, Bank v. Reynolds, 13 Ohio, 104. But in this case nothing of the kind was done by the creditor.

It was the duty of the sheriff to have completed execution by a sale of the property. His neglect to do so imposed a heavy responsibility on him. If his conduct had been prompted by the creditors, they would have assumed the risk of the consequence.

Filing the affidavit of suretyship under the statute deprives the creditor of none of his rights under the judgment, except to control the order of liability as between the principal and surety. It makes it imperative that the principal's property shall be first taken in execution, but it leaves the effect of indulgence and passiveness as it was before.

The affidavit does not make it incumbent on the creditor promptly to pursue the principal to satisfaction, at the risk of losing his right against the surety by indulgence.

Decree affirmed.

Judge CAMPBELL, not having heard the argument, took no part in the decision.