PICKETT *vs.* KING.

The rule in respect to partial payments remains the same as it was before the code, viz. that in order to take a case out of the statute of limitations they must be made under circumstances to warrant a finding, as a question of fact, that the debtor intended to recognize as subsisting the debt in question, and that he was willing to pay it.

A debtor, upon assigning his property in trust for the benefit of creditors, parts with all control of the property assigned, and appoints the assignees his trustees to apply the proceeds thereof as directed in the assignment; but they do not become his *agents* in such a sense as to have authority to make any new contract or promise binding upon him, or to make a *payment* upon any of his debts which shall be equivalent to a new and express promise by him.

An assignee is not an *agent* authorized to renew a debt, or take it out of the statute of limitations, as against the assignor.

The case of *Barger* v. *Durvin* (22 *Barb.* 68) disapproved.

APPEAL by the plaintiff from a judgment entered upon the report of a referee. The action was brought against the defendant as survivor of himself and Hosea King, deceased, upon a note given by them as copartners, and payable one day after date, dated October 9th, 1852. The action was commenced October 16th, 1858. On the 13th day of October, 1858, six years had elapsed from the time the cause of action accrued. On the 11th day of October, 1852, the maker of the note made a general assignment of his property in trust for creditors to Cullen Foster and J. T. Mackenzie. This assignment, after providing for the payment of expenses, in the first class, provides for the appropriation of the fund to the second class, (among other things,) as follows: "To the payment of all debts now due or now contracted and hereafter to become due against us, the said Hosea King and Darius W. King, as such partners, to any person or persons whomsoever, for money actually borrowed, including a debt due the firm of J. & A. Merrick for flour, and all payments upon the last mentioned debts to be made *pro rata.*" The note in suit was given by the defendants for money borrowed by them, and the debt was claimed by the plaintiff to be within the terms of the assignment. On the 11th July, 1853, the as-

signees paid on this note $77.02 out of the trust fund, and that payment was relied on by the plaintiff to take the case out of the statute of limitations. The defendant, among other defenses, set up the statute of limitations as a bar. The action was referred to a referee, who found the above facts, and arrived at the conclusion of law that the statute of limitations was a bar; and that the payment made by the assignees did not take the case out of the operation of the statute. He therefore ordered judgment for the defendant, for costs.

*D. H. Devoe,* for the appellant.

*William Clark,* for the respondent.

*By the Court,* E. DARWIN SMITH, J. The numerous and, multifarious decisions in this country and in England upon the statute of limitations demonstrates the folly of departing from the original simplicity of the statute, to favor cases of supposed or real hardship. The original statute of James 1st, chap. 165, which has been adopted in all the American states, provides in explicit language, (§ 3,) that "all actions of trespass, detinue, of account, and upon the case, and all actions of debt or contract without specialty, &c., shall be commenced and sued within six years next after the cause of such actions or suits, and not after." Instead of treating this statute as a conclusive bar and allowing the original debt to constitute an adequate consideration for a new contract or express promise, the courts in England and in this country till quite recently have regarded the statute as merely raising a *presumption of payment,* which might be repelled by an acknowledgment of the existence of the debt or any slight admission that it remained unpaid. Before the code the cases had got back so far towards the original meaning and intent of the statute, as to hold that there must be an *express promise* or a clear recognition of the present existence

of the demand from which a promise might be implied. (*Stafford* v. *Richardson,* 15 *Wend.* 302. *Sands* v. *Gelston,* 15 *John.* 511.) It is upon this principle that partial payments have been held to revive the debt. They have been held to constitute both an admission of the debt and also to imply a willingness to pay the same. Repugnant as this class of cases is to sound principle and to the obvious meaning and intent of the statute that the same should be an absolute bar not to be overreached except by a new and express contract, still the rule has so long prevailed in respect to partial payments that it would be unwise to disturb it, if the legislature had not expressly affirmed or sanctioned it in section 170 of the code, in the re-enactment of the statute of limitations, in which section, while an express promise in writing signed by the party to be charged therewith is required, to take a case out of the operation of the statute, it is expressly provided that the said section "shall not alter the effect of any payment of principal and interest." In respect to partial payments, therefore, the law remains as before the code. The rule in respect to such payments is that they must be made under circumstances to warrant a finding, as a question of fact, that the debtor intended to recognize as subsisting the debt in question and which he was willing to pay. (*Shoemaker* v. *Benedict,* 1 *Kern.* 185.) If the assignment in this case had provided in express terms for the payment of the note upon which this action is brought, no doubt such provision would have taken the debt out of the statute, and the provision which is made for its payment in a particular class of creditors, I think, for that purpose, must be equally operative. The provision in the assignment in favor of all debts for borrowed money included the plaintiff's debt, and was an admission of its existence, and implied also a willingness to make payment thereof. But such recognition of the debt, and willingness to pay it, I think, must be confined to the *point of time* when the assignment was made. At that point of time the defendant must be held to recognize the existence

and validity of the debt and to express a willingness to pay it. Provision for its payment must be equivalent to an express promise then made to pay such debt, and any payment thereafter made with funds set apart and provided to pay such debt should be deemed made as of that date, and to relate to that period of time, whenever made. Upon making such assignment the defendant parted with all control of the property assigned, and appointed his assignees his trustees to apply the proceeds thereof as directed in said assignment; but I cannot think they became his *agents* in such a sense as to have authority to make any new contract or promise binding upon him, or to make a payment upon any of his debts which should be equivalent to a new and express promise by him; and such must be the consequence if partial payments made by them are to have the same effect as if they were made by the debtor himself. In this particular I cannot agree with the case of *Barger* v. *Durvin and others*, (22 *Barb.* 68.) That case is precisely in point upon the question, but it is a special term decision, and I cannot regard it as authoritative. That case is put upon the ground that the payment by the assignee shall be regarded as a payment by an agent, under the authority and direction of the debtor, and in that sense to be equivalent to a payment by the debtor himself. The case of *Jackson* v. *Fairbanks* (2 *H. Black.* 340) would sustain such views of the statute. In that case a dividend paid under a commission of bankruptcy was held such an acknowledgment as to revive the debt. But this is questioned, and virtually repudiated, in *Blanchard* v. *Wharton*, (1 *Barn. & Ald.* 220,) and in 15 *Vesey*, 499, in *Roscoe* v. *Hale*, (7 *Gray*, 274,) *Llodare* v. *Doane*, (*Id.* 378,) and in *Roosevelt* v. *Mack*, (6 *John. Ch.* 266, 292,) where Chancellor Kent says: "It is going unreasonably far to construe payments by assignees or trustees who are not parties to the contract, or under any personal obligation to pay or contribute, as meaning more than they plainly import, or as carrying with them sufficient evidence of a renewed personal promise of the

Pickett *v.* King.

original debtor to pay." He says also, and I think his reasoning applies to cases of voluntary assignments or other trusts as much as to assignments under the insolvent or bankrupt law, "such special trusts were not created for any such purpose, and it is perverting the intention of the parties and is plainly repugnant to the reason and equity of the trust, to make the ordinary execution of the trust the ground of a constructive new assumption of the debt by the debtor." This language seems to me to apply to this case in all its force, and to be an express repudiation of the doctrine that an assignee is an agent authorized to renew a debt or take it out of the statute of limitations, as against the assignor. The assignee is not an agent for any such purpose. He is authorized and appointed to apply the money in his hands in a specified way, and has no other power or authority in behalf of his assignor; and he has no power to express for his assignor a subsisting or continuing *willingness* to pay any further sum to the creditor, on account of the debt, than is expressly provided for that purpose. In *Shoemaker* v. *Benedict*, (1 *Kernan,* 184,) it is said the acknowledgment or promise must be made by the *party* to be charged, or by some person authorized by him. The only promise made by the defendant was made in and by his assignment, and no person is therein authorized to make any new promise for him. It would be highly unjust to allow an assignee, under such construction, to continue and revive a debt of his assignor indefinitely and against his will, and without his knowledge. The cases of *Van Keuren* v. *Parmelee,* (2 *Comst.* 253,) and *Shoemaker* v. *Benedict,* (*supra,*) repudiate, and I think wisely, this class of constructive agencies by which debts were wont to be revived without the knowledge or consent of the debtor. In principle I think this case is within the spirit of those decisions. The referee, I think, rightly decided the case, and the judgment should be affirmed.

[MONROE GENERAL TERM, March 4, 1861. *Smith, Johnson* and *Knox,* Justices.]