By the Court — Monell, J.
The plaintiff relied upon a new promise to remove the bar of the statute of limitations.
The Beferee having found against the plaintiff on that fact, we are called upon to review his finding upon the evidence.
The evidence relied on by the plaintiff, as establishing a new promise, is to be found in some letters of the defendant’s testator, annexed to a commission executed in France.
The first of these letters is addressed to Mr. Louis Detun cq, at Paris, and is dated Hew York, May 14, 1851. After speaking of the bad faith of certain persons who had caused his ruin he says : “I say those persons because “ there is more than one. 1st, That one who has manufac- “ tured the hair works which were sent to me, is a certain “ Guyaz, a man without honesty, who was superintendent “ of the factory, and who manufactured with so much “ fraud that I was obliged, at last, to sell the same at a “ price not sufficient to cover my expenses for freight and “ custom house duties. When last in Paris their claim “ was of nearly eleven thousand francs. To get myself “ out of any trouble, I offered them three thousand francs, “ which offer they declined to accept—their object being, “ knowing that I was obliged to return to the United “ States, and aware that I was possessed of a property—to “ prosecute me when absent, and to expropriate me. They “ have succeeded. I have been prosecuted before the Tri- “ bunal of Commerce by a person of the name of J. “ Creuse, who solely lent his name to a Mr. Gibaud, who “ became the purchaser of the property owned by me in “ the Pigal street, and at the' passage des beaux arts, at “ Monmartre.
*125 “ Therefore, it is not upon this Orense, who has reeo- “ vered judgment against mein the Tribunal of Commerce, “ that you have to call, but upon Mr. Gibaud, who lives in “ St. Dennis street. Consequently, I pray you, my dear “ sir, to be so kind as to see that Mr. Gibaud, and to make “ him an offer of twenty per cent on the debt. It will be “ necessary for you to consult a lawyer, to whom you may “ show the papers intrusted to the kind care of your “ daughter. She will, also, deliver to you the sum of “ money destined to the settlement of that unhappy affair. “ If Mr. Gibaud persists to refuse this last offer, you may “ tell him that it is the last he will hear of me.”
The next letter is of the same date and is addressed to Josephine Detuneq, at Paris. In it, he says, “ Please “ explain to your father the reason why I wrote that letter “ to him. By a thorough understanding between you and “ him, I hope that you will easily succeed in settling that “ cursed affair.”
On the 30th May, 1851, in another letter addressed to Josephine Detuneq, he says, “I suppose that Mr. Gibaud “ has easily accepted my offers.”
On the 14th of July, 1851, Louis Detuneq, addressed a letter to the plaintiff, in which he says, “lam bearer of a “ power from Mr. Martin of Hew York, authorizing me to “ propose to you a convenient settlement in relation to the “judgments rendered by the Tribunal of Commerce of “Paris, in your favor .against him, and giving me all “ powers and authority to negotiate and compromise with “ you; and further placing at my disposal the necessary “ money to pay you, if such proposition is accepted.” Under date of Hovember 28, 1851, Josephine Detuneq wrote the plaintiff, renewing the offer of compromise.
On the 24th January, 1852, Louis Detuneq again addressed a letter to the plaintiff, in which he says: “ My “ daughter, when back to Hew York, has communicated “ your proposition to Mr. Martin; but he refuses peremp- “ torily to pay more than three thousand francs. * * # * “ He says that * * * your best policy is to" accept his *126 “ offer; because, otherwise, you will never get a cent from “him.* * * * Mr. Martin’s intention is, that upon receiving “ three thousand francs, you will give him a receipt in full.”
Josephine Detuncq, who was examined as a witness on the part of the plaintiff, testified that the affair to which Martin alluded in his letter to Louis Detuncq, was the indebtedness from Martin to Orense, the plaintiff.
The letters relied on as containing such a recognition of the debt as is claimed amounts to a promise to pay, are those of November 28, 1851, and January 24, 1852, from Josephine and Louis Detuncq. All the previous letters, of which I have given extracts, having been written more than seven years and six months before the commencement of the action, are important only as containing the authority to Detuncq to make the offer of compromise.
If the contents of the letters of Martin can be construed into a new promise to pay, and they contained sufficient authority to Detuncq to make the promise, then a promise made by an agent would be binding upon the principal. (Winchell v. Hicks, 18 N. Y. R., 558.)
But the greatest force and effect I am able to give to the letters, is, that they contain a quasi recognition of an indebtedness, coupled with a desire that it might be compromised.
It is necessary to refer to a few only of the cases where this subject is considered, to see how the law stands.
In Allen v. Webster, 15 Wend., at p. 289, the rule is stated to be “ that to revive a debt barred by the statute of limitations, whether the statute theoretically operates upon the debt itself or upon the remedy only, there must be an express promise, or an acknowledgment of a present indebtedness; a subsisting liability and a willingness to pay it.”
In Deyo v. Jones, 19 Wend., at p. 493, it is said that, “ to avoid the statute, the admission must amount to an unqualified acknowledgment of the debt, disconnected *127 with any circumstances indicating an intention not to become liable upon it.”
In Bell v. Morrison, 1 Peters, 351, the rule is thus stated: “ If there be no express promise, but a promise is to be raised by implication of law, from the acknowledgment of the party, such acknowledgment ought to contain an unqualified and direct admission, of a present subsisting debt, which the party is liable' and willing to pay. If there be accompanying circumstances, which repel the presumption of a promise or intention to pay,” &c., “they ought not to go to a Jury as evidence of a new promise.”
KTo more clear and distinct enunciation of the rule can be found in the" books, and the language of Mr. Justice Story, which I have quoted, is adopted and approved by our Court of Appeals, in Bloodgood v. Bruen, (8 N. Y. R., [4 Seld.,] 369.)
In a later case, (Pickett v. King, 34 Barb., 195,) the same general rule is recognized, where the Court say it is upon the principle of an implied promise, that partial payments have been held to revive the debt, as being both an admission of the debt, and as implying a willingness to pay the same.
In Bowker v. Harris, (30 Vt. R., [1 Shaw,] 424,) the action was to recover the balance of a debt, part having been previously paid upon a compromise. The defense was the statute of limitations, and the plaintiff relied upon the payment as evidence of a new promise. Barrett, J., says: “ It is claimed by the plaintiff that this constituted such an acknowledgment of the existing indebtedness, as, within the principle of the decided cases in this State, will take the case out of the operation of the statute. We regard the rule of law on this subject to be comprehensively, and with just discrimination, laid down in the case of Phelps v. Stewart, (12 Vt. R., 256.) Under that rule, in its legitimate application, we are fully of the opinion that the payment made by the defendant in this case did not operate as an acknowledgment of an existing indebtedness. The payment was made to end the indebt *128 eduess, not as recognizing a still subsisting balance. Both parties so .understood and designed it at the time it was made. Instead, therefore, of indicating a willingness on the part of the defendant to stand liable for the balance claimed, the whole purpose was to end such liability. It would be doing violence to the obvious reason and sense of the transaction, to imply from it a promise to pay. The implication is directly the other way.”
Giving the plaintiff the benefit of the letter to Louis Detuncq of the 14th of May, 1851, and assuming a continuing authority in Detuncq to bind his principal by a promise on the 24th January, 1852, what is the proof of a new promise? Martin alludes to the judgment in favor of Orense, the plaintiff, recovered in the Tribunal of Commerce, but directs Detuncq not to call upon him, but upon a Mr. Gibaud, and to make him an offer of twenty per cent of the debt. And he adds “If Mr. Gibaud persists to refuse this last offer, you may tell him that it is the last he will hear of me.” Detuncq urged an acceptance of the offer of compromise, “because when once gone away, it will be finished and you will never hear of Mr. Martin.” Again, (letter of January 24, 1852,) “your best policy is to accept the offer, because otherwise you will never get a cent from him.” Although there is in these letters an acknowledgment of an existing indebtedness, there cannot be implied from them a promise to pay. The acknowledgment was made upon an offer of compromise, which seems to have been rejected and cannot, therefore, be proven against the party making it. (Marvin v. Richmond, 3 Denio, 58.) There is also, if not in express language, yet to be distinctly inferred, an unwillingness to pay. The offer of twenty per cent of the debt, was for the purpose of buying peace. If, as is said in Buller’s ET. P., 236, A. sues B. for £100, and B. offers to pay him £20, it shall not be received in evidence, for this neither admits or ascertains any, debt, and is no more than saying he would give £20 to get rid of the action. The offer having been rejected it cannot be used afterward for any pur *129 pose. So far as it may be regarded as the admission of a fact, as of the existence of the debt, it may be competent evidence. The distinction in the elementary books, is between the admission of a fact, and a mere proposition not accepted, to do an act by way of settlement. The former is admitted, the latter excluded. (1 Phil. Ev., 108.) The use sought to be made of this offer of compromise, is not as admitting the debt only, but as containing an implied promise to pay. For such a purpose it does not seem to me it can be used. It was an offer to do an act by way of settlement, which within Mead v. Degolyer, (16 Wend., 644,) should have been excluded.
But if it could be admitted, it fails to raise, by implication or otherwise, a promise to pay the debt. There is not such a recognition of the debt, coupled with an expressed willingness to pay, as takes the case out of the operation of the statute. On the contrary, there was an unmistakable determination, if the compromise was rejected, to pay nothing. (Rockham v. Marriott, 37 Eng. L. & Eq., 460.)
The authority to Detun cq was to effect, if possible, a settlement of the debt. It did not extend beyond that. He had no power to bind his principal by an express promise, and he could not, by any act, declaration or admission, raise one by implication. He was not made an agent for any such purpose, and, therefore, it is, that no efficacy can be given to the agent’s letter of the 24th January, 1852, which it is claimed contains the evidence of the new promise. It cannot be that an agent can bind his principal by an implied new promise made within six years, where the authority to make it was more than six years before. The statute would commence running from the time the authority was given,' not from the time the agent made the new promise.
Upon the whole, we are of opinion, first, that the letters of the defendant’s testator, do not contain such a recognition or admission of the debt, as was to justify the inference or implication of a promise and willingness to pay; *130 and second, that if they did contain one, the promise was not in time to remove the statute bar. Of course we reject the contents of the agent’s letter of the 24th January, 1852, as being without authority.
The view which we have taken, renders it unnecessary to determine whether the limitation of the Revised Statutes (2R. S.,448,^8,) of suits against executors to eighteen months, is repeated by the provision of the Code, (Code, § 102,) which limits them to one year.
The judgment should be affirmed.