## ALLEN *v.* O'DONALD and others.

*(Circuit Court, D. Oregon. July 19, 1886.)*

1. **HUSBAND AND WIFE—MORTGAGE BY—RELEASE OF WIFE—SALE OF PROPERTY —RIGHTS OF CREDITORS.**

   A husband and wife joined in a mortgage, including certain property belonging to each, to secure the payment of the husband's debt, and after the debt was due the husband, with the assent of creditors, conveyed his property to a third person in trust, to manage the same, and, with the consent of the debtor, to sell and dispose of the same, and apply the proceeds on the debt; in pursuance of which authority said trustee sold a portion of said property, and applied the proceeds accordingly, and thereupon the creditors released their mortgage on the same. *Held,* (1) that the property of the wife was not discharged from liability for the remainder of the debt by such release unless she was pecuniarily injured thereby; (2) that a provision in such mortgage that, in case of default in the payment of the debt, the mortgage may be foreclosed according to law, is mere surplusage, and did not prevent the debtor and creditors from making other arrangements for the disposition of his property in satisfaction of the debt, and the release of the same from the mortgage, without affecting the liability of the wife's property, unless it appeared that the property was sacrificed or disposed of at less than its market value, to her injury; (3) that the burden of proof is on the creditor to show that such sale was fair, and the proceeds justly applied, or that the property of the wife was not thereby wrongly made to bear any more than its proportion of the debt; (4) that the voluntary forbearance of the creditors to sue the debtor while this amicable arrangement between him and them for the disposition of his property was being carried out, did not amount to an extension of time to the debtor which would discharge the property of the wife from the mortgage, for such forbearance was neither for a time certain, nor for a valuable consideration, and left her at liberty to pay the debt, and proceed against the husband, subrogated to the rights of the creditors.

2. **EQUITY—LIMITATIONS—NOTE AND MORTGAGE.**

   The rule of limitation in a suit in equity on a note and mortgage to recover the contents of the former, and enforce the lien of the latter therefor, is the same as in an action thereon at law.[1]

3. **COURTS—JURISDICTION OF UNITED STATES CIRCUIT COURT—PROMISSORY NOTES —NEGOTIABILITY.**

   By the law-merchant a promissory note payable to order or bearer is negotiable as long as it exists unpaid, and the indorsee or assignee thereof may, under section 1 of the judiciary act of 1875, (18 St. 470,) sue thereon in this court without reference to the citizenship of his indorser or assignor.

4. **STATUTE OF LIMITATIONS—PART PAYMENT ON NOTE.**

   Under section 25 of the Code of Civil Procedure a payment on a promissory note, at any time after its maturity, by any one who may be compelled to pay the same, constitutes the point of time from which the limitation against an action thereon commences to run.[2]

5. **EQUITY—EVIDENCE—NEW MATTER IN ANSWER.**

   New matter in an answer in equity, or an allegation not responsive to the bill, is not evidence, and the burden of proof is on the defendant to support it.

6. **SAME—ANSWERS ON INFORMATION AND BELIEF—WEIGHT.**

   General allegations, made on information and belief, without any verifying circumstance of time, place, or amount, even when responsive to the bill, are not entitled to much weight as evidence.

Suit to Enforce Lien of Mortgage.

*George H. Williams* and *Henry Ach*, for plaintiff.

---

[1] See note at end of case, part **1.**      [2] See note at end of case, part **2.**

*William H. Holmes,* for defendants.

DEADY, J. This suit is brought to enforce the lien of two mortgages, executed by Thomas Cross and Pluma F., his wife, to secure the payment of two promissory notes made by said Thomas Cross,— the one on November 1, 1871, to the firm of Allen & Lewis, for the sum of $30,000, payable in three years after date, with interest at 10 per centum per annum, and the other on January 23, 1872, to the same firm, for the sum of $10,000, payable in one year from date, with interest at 12 per centum per annum. The mortgages were also made to Allen & Lewis, and each was executed contemporaneously with the note it was intended to secure. The first one includes 15 parcels of agricultural land situate in Marion county, and containing about 3,361.54 acres, and the second one includes the same property, and also certain lots and parts thereof situate in Salem, in said county. The two parcels numbered 14 and 15 were the property of Pluma F., and consist of 80 acres of the donation of David Leslie, and the donation of F. S. Hoyt and wife, containing 131 acres.

On September 16, 1872, Pluma F. died, and on January 22, 1876, the notes being still unpaid, Thomas Cross conveyed the premises to Mr. C. H. Lewis, of Portland, and of the firm of Allen & Lewis, on the parol, but admitted, trust and understanding that Lewis would, at the expense of the property, farm or let the same, and apply the rents and profits arising therefrom on the debts secured thereon; and that he might, with the consent of Cross, sell and dispose of the whole, or any portion, of said land, either at public or private sale, and apply the net proceeds thereof on said debts. On February 5, 1884, Thomas Cross died, and soon after the notes and mortgages were indorsed and assigned to Mr. L. H. Allen, of San Francisco, a member of said firm, and the plaintiff herein, who, on August 6, 1884, commenced this suit. On January 20, 1885, an order was made that the bill be taken for confessed against all the defendants except Edwin C. Cross and Frank R. Cross, the children and heirs of Pluma F., who, on March 10th, answered jointly, the latter by the former, as his guardian.

During the year 1876 the defendant Lewis, with the approval and co-operation of Thomas Cross, had the portion of the lands lying in township 6 S., and range 3 W., and containing 2,326.37 acres surveyed, and divided into tracts of near 40 acres each, and a plat thereof made and duly recorded, and the same appraised by Cross and other disinterested and qualified persons. Between October 14 and November 15 of this year, Lewis, in pursuance of said trust, sold at private and public sale 862.46 acres of the land so surveyed and appraised for the sum of $8,593.81, the same being $268.16 more than the appraised value thereof, which was applied as follows: (1) $809.85, in payment of the expenses of the sale, including the cost of the survey, plat, and advertisements; (2) $725.50, paid on March

22, 1876, at the request of Cross, to discharge a mortgage on 320 acres of said land, given to the board of school land commissioners on June 18, 1867, to secure the payment of the note of Cross of that date for $594, and payable with interest one year after date; (3) $221.74, paid on the same day, and like request, to said board, to obtain a deed for 110.87 acres of said land theretofore purchased by Cross from the state; and (4) $6,837.11, being the remainder, on the notes aforesaid; and on November 2, 1878, the firm of Allen & Lewis executed a release to Cross, discharging the lands so sold from the operation and lien of said mortgage.

On the filing of the bill, it appearing therefrom that the land was not sufficient security for the debt, a receiver was appointed to collect the rents and manage the same; and on May 30, 1885, an order was made, with the consent of the defendants Edwin C. and Frank R. Cross, that the receiver sell the remaining portion of the property subject to the mortgages, except the parcels 14 and 15 aforesaid; and on September 17th he sold the same at auction, receiving for the 2,499 acres of agricultural land $39,344.04, and for the town lots $5,425, in all the sum of $44,769.04, which was applied on the notes, less the sum of $88.25 paid for advertising and an auctioneer. On March 8, 1885, the cause was before the court on exceptions to the answer of Edwin C. and Frank R. Cross for impertinence therein, namely: (1) That it was stipulated in said mortgages that in default of payment of the notes they should be foreclosed according to law, and no other or different mode of disposing of said lands was provided therein, or contemplated by the parties thereto; (2) the sale of a portion of said lands as above stated, for $8,593.81, was contrary to the terms and conditions of the mortgages, and without the consent of the defendants; that the property so sold was then worth, and under ordinary circumstances would have sold for, $20,000; and that the expense of said sale was wrongfully charged to the proceeds thereof; and (3) that the lands of Pluma F. included in said mortgages were, at the time of such sale, and now are, worth not more than $10,000, and therefore the same ought to be released and discharged from the operation and effect of said mortgages.

In support of the answer it was contended that when a creditor relinquishes a lien on any portion of his debtor's property, without reducing the debt in an amount equal to the value thereof, the property of the surety is so far discharged from liability therefor. The exceptions were overruled; and, in disposing of them, the court said:

"In round numbers, there is now due on these notes not less than $80,000. In the argument for the exceptions it is claimed that the whole property included in the mortgages is not sufficient to pay the debt by a much larger sum than the alleged value of the property of the defendants, and if this is so, then the defendants are not injured by what they complain of, and the allegations excepted to would be no defense to the bill, and be clearly impertinent. But the court cannot say judicially what this 3,661.54 acres of land is worth. It cannot assume that it is only worth $70,000, and not $80,000,

though it may fetch either sum when put up at auction. The rule seems to be that the burden of proof is on the creditor, in a case of this kind, to show that the surety has not been injured by the transaction. Brandt, Sur. § 370. It follows that the allegations excepted to are not impertinent, but constitute a good defense to the relief prayed for, as to these defendants. The plaintiff must either deny them by a replication, or confess and avoid them by proper amendments to the bill." 23 Fed. Rep. 573.

Thereupon, on June 1, 1885, an amendment to the bill was filed, setting out in detail the sale of the 862.46 acres aforesaid, and the disposition of the proceeds thereof, as above stated; and on September 15th a stipulation was filed to the effect that the answer to the original bill should stand as the answer to the amendment also, and admitting that the allegations in the amendment, when not denied by the answer, except the one concerning the value of the lands sold in 1876, are true; and on October 28th the usual replication was filed to the answer.

No evidence was taken in the case, except the deposition of Mr. Lewis, by the defendants, on the question of the *bona fides* of the transfer of the notes and mortgages, and his consent as creditor to the sale of Cross' land in 1876. On April 6th a stipulation concerning the facts was filed, and the case was finally heard and submitted on the pleadings, and this stipulation and deposition. From these it appears (1) that there is now due on the note of 1871 the sum of $45,137, with interest thereon from December 22, 1881, at 10 per centum per annum, and on the one of 1873 the sum of $10,000, with interest thereon from January 25, 1879, at 12 per centum per annum, less $1,686.35 paid thereon on February 1, 1883; (2) that the appraisement aforesaid was openly made, without fraud, and that the persons who made the same would, if called as witnesses, "approve and verify" the same "in all particulars;" (3) that the defendants can produce five persons, who live and own land in the immediate vicinity of the 862.46 acres of land sold in 1876, and qualified to give an opinion concerning the value thereof, who would, if called as witnesses, testify that the same were worth at the time, "at private sale, in the ordinary course of business," $13,360, instead of $8,593.81, for which they were sold,—a difference of $4,766.19.

On these facts the defense that the creditors released the property of the principal debtor without a corresponding reduction of the debt, to the injury of the surety, has not a leg to stand on.

The allegation in the answer that the property sold in 1876 was worth $20,000 is not responsive to the bill, and therefore not evidence for the defendants. It is new matter, set up as a defense, and must be proven. *Hart* v. *Ten Eyck*, 2 Johns. Ch. 87; Story, Eq. Pl. § 849a; 2 Story, Eq. Jur. §§ 1528, 1529. There is no evidence to support it. Nor does it follow that because five persons, owning land in the vicinity of these premises, would swear that the property disposed of in 1876 was worth near 50 per centum more than it brought, that it was sold for less than its market value. It was sold under exception-

ably favorable circumstances, and the result is better evidence of its value than the *ex post facto* conjecture of persons interested in upholding the price of lands in the vicinity. The very appraisement itself, made by the owner of the land, in conjunction with others of his selection or approval, ought to far outweigh any such testimony as this. Besides, it is not to be expected that mortgaged property, when sold on account of the default of the debtor, is to be disposed of "at private sale, under ordinary circumstances," whatever that means, but at auction, at a forced sale, for what it will bring in cash. If these five persons were asked what the land would sell for in 1876 under those circumstances, they probably would not differ much from the appraisers.

But admitting, for the purposes of the argument, that the property was even worth, at a forced sale, $20,000, as alleged in the answer, the fact is of no avail to the defendants. Casting the interest on the amounts admitted to be due on these notes from the dates specified in the admission,—four years and seven months in the case of the first one, and seven years and six months in the second one,—and deducting therefrom the sum of $1,686.35, interest paid on the latter on February 1, 1883, and the proceeds of the sale by the receiver ($44,-769.04) from the date of the confirmation of the sale, November 10, 1885, and there is now due on these notes $36,417.08. Now, charge the plaintiff, if you please, with the difference between $20,000, the alleged value of the lands sold, and the sum they were actually sold for, $11,406.19, and there is still a deficit of $25,010.89, or over $15,-000 more than the value of the surety property. In the face of these facts it is idle to talk about the surety being injured by the creditor's management of the debtor's property. The only persons who appear to be injured are themselves; and that, not because of the mismanagement of the property, but the fact that they trusted the debtor beyond his means of payment.

It is admitted that Mrs. Cross' property was put into these mortgages as a security for her husband's debts, and it is not disputed that if his creditors gave up their lien on any portion of their debtor's property without a corresponding reduction in the amount of the debt, and the surety will be injured thereby, that her property is so far discharged. This rule does not depend on the contract between the surety and the creditor, but on equitable principles inherent in the relation of principal and surety, which require that the property of the former pledged to the creditor for the payment of his debt shall be applied to that purpose, so as to prevent the burden of the debt from being thrown on the surety. A creditor with a lien on his debtor's property is so far a trustee for the surety, and must not do any act which will deprive him of the benefit of it. On paying the debt the surety is subrogated to the right of the creditor in this respect, and if, in the mean time, the latter has done anything to impair the value of such right, the former is so far discharged from his liability. Brandt,

Sur. § 370; *Hayes* v. *Ward*, 4 Johns. Ch. 129; *Baker* v. *Briggs*, 8 Pick. 129.

But this equitable principle is not to be applied so as to produce inequitable results, as is often the case with the operation of the rule that arbitrarily releases a surety from his liability where the creditor has given the principal an extension of time, without reference to the fact of whether the surety was or could be in any way injured thereby. Therefore, where it appears that the surety was in no way prejudiced by the release of the debtor's property, because the property of the surety would be needed to satisfy the debt in any event, he cannot complain of such release. The only person who is injured is the creditor.

The contract of the surety in this case was that her property might be taken to pay her husband's debts, provided they were not paid by him, or his property included in the mortgage was insufficient for that purpose. As the debt was not paid by the debtor, and his property pledged for its payment has proved insufficient for the purpose by a sum greater than the value of the surety's property, it is not apparent how the surety could be wronged if the creditors had released the whole of the debtor's property without any reduction of the debt, and enforced the mortgage against her property alone. Brandt, Sur. § 380; *Neimcewicz* v. *Gahn*, 3 Paige, 642.

The cases of *Mayhew* v. *Boyd*, 5 Md. 102, and *Ives* v. *Bank*, 12 Mich. 362, cited by counsel for the defendants on this question, are not in point. They both turned on the construction of the contract between the creditor and surety, and not the application of the equitable rule in question; and I may add that the Maryland case carries the doctrine of the arbitrary right of the surety to be discharged from his obligation by a mere extension of time to the debtor, whether he is thereby prejudiced or not, to the very verge, and manifestly so as to do injustice to the creditor in the particular case.

Other technical defenses to this suit are made in the answer, and reserved in the stipulation of April 6th; and—

*First.* The creditors, from time to time, for á sufficient consideration from Cross, extended the time of payment of these notes, whereby the property of the surety was discharged from all liability thereon.

This part of the answer is made on information alleged to have been derived from Thomas Cross in his life-time, concerning matters which transpired when the defendants were children. The statement of the matter is very vague and general, without a single verifying circumstance of time, place, amount, or name, except that of a dead man. Such an allegation is of little force as evidence, even if made in response to the bill. 1 Daniell, Ch. Pr. 846, note 1. But it is not made in response to any allegation in the bill. It is new matter set up as a defense. The burden of proof to establish it is on the defendants, and their answer is not evidence in support of

it. *Hart* v. *Ten Eyck*, 2 Johns. Ch. 87; Story, Eq. Pl. § 849a; 2 Story, Eq. Jur. §§ 1528, 1529. No evidence is offered by the defendants on the point. In their answer they allege that the only living person who is cognizant of the fact of the extension of time is the defendant Lewis, and he is interested against them; and the facts can only be obtained from him by subpœnaing and examining him as a witness in the cause, which they have failed to do. It is not necessary to say, in this community, that, if the defendants or their counsel believed that Mr. Lewis had made any such arrangement with Mr. Cross in his life-time, they would not have hesitated to call him as a witness, and take his testimony on the subject, let his interest in the result be what it may.

However, it is argued that the conveyance of the premises to Mr. Lewis on the trusts mentioned was in effect an extension of time for payment to Cross. But there is nothing in the facts or the nature of the transaction to support the assertion. Cross was the legal owner of the property he mortgaged, and could sell it, subject to the mortgage, to whom he pleased; and all that Lewis did with it he might have done himself. But it was convenient and satisfactory to the parties that one of the creditors should become the trustee of the legal title in this amicable attempt to dispose of the property and apply the proceeds on the indebtedness. The surety had no right to object to the proceeding, and if the property was fairly disposed of, under the circumstances, she could not be injured by it. And it may be even admitted that this arrangement with Mr. Lewis fairly implied that the firm of Allen & Lewis would, while it was being carried out, forbear to sue the debtor. But there is no evidence of any agreement thereabout, or consideration therefor. An agreement to give the debtor time is not binding unless made for some definite period, and on a sufficient consideration; and although the creditor should, in pursuance of an agreement or understanding, express or implied, actually forbear to sue for a given length of time, but without any consideration therefor, the surety is not thereby discharged. And the reason is apparent. Such an arrangement is not binding, and therefore it does not prevent the surety from paying the debt, and proceeding with the right of the creditor to enforce the claim against the debtor. Brandt, Sur. § 296.

*Second.* The property could not be lawfully sold otherwise than on the decree of a court, given in a suit to enforce the lien of the mortgage, as provided therein.

This provision in the mortgage, giving the creditors a right, in case of default in payment, to enforce the lien of the mortgage by legal proceedings, is a mere superfluity. The law gave them that right; and, notwithstanding the provision, the creditors and the debtor were at liberty to make any disposition of the property they saw fit, for the purpose of paying the debt, or any portion of it, and the surety has no right to complain of it, unless she can show she

was injured by it, which she was not, but rather the contrary; for it goes without saying that the property sold under this arrangement brought more than it would at an ordinary sheriff's sale.

*Third.* The suit is barred by the lapse of time or laches of the creditors.

"In the consideration of purely equitable rights and titles courts of equity act in analogy to the statute of limitations, but are not bound by it." *Manning* v. *Hayden,* 5 Sawy. 379. "When an action upon a legal title to land would be barred by the statute, courts of equity will apply a like limitation to suits founded on equitable rights to the same property." *Hall* v. *Russell,* 3 Sawy. 515. "In cases of concurrent jurisdiction, such as matters of account, etc., where the party may proceed either at law or in equity, the statute of limitations applies with equal force in both courts. In such cases courts of equity consider themselves within the spirit of the statute, and act in obedience to it; but in the consideration of purely equitable rights and titles they act in analogy to the statute, but are not bound by it." *Hall* v. *Russell,* 3 Sawy. 515; Wood, Lim. § 58.

The remedy on these notes is a case of concurrent jurisdiction, and the limitation prescribed by the statute of the state (six years) applies in this suit as well as an action at law. Therefore the question of laches does not arise in the case. The plaintiff has all the time the statute gives him, and no more, in any case. Section 25 of the Code of Civil Procedure regulates the effect of a payment of principal or interest on a note after it becomes due, and declares "the limitation shall commence from the time the last payment was made." In *Sutherlin* v. *Roberts,* 4 Or. 378, it was held that the fact of part payment on a note is made the test by this section for ascertaining whether an action thereon is barred, and if not barred the same may be maintained on the original promise, and that any person who could be compelled to pay the note is competent to make the payment. The payment in that case was made by the administrator of the payor.

The first of these notes, allowing three days of grace, fell due on November 4, 1874, when the statute commenced to run, and if no payment had intervened the bar would have been complete by this same day in 1880. But on January 1, 1877, and in 1878, 1880, and on December 22, 1881, payments of interest were made on the note amounting to $5,780.71. The second note, allowing days of grace, fell due on January 26, 1873. The interest was paid in full to January 25, 1879, one day before the statute had run, but whether all on that day, or year by year, as it fell due, does not appear, but presumably the latter. However, it is a matter of no moment here. On February 1, 1883, a payment of interest was made thereon of $1,686.35. This suit was commenced on August 6, 1884, when six years had not elapsed since the last payment on either note, and therefore the remedy on them is not barred.

I am aware that in the opinion in *Sutherlin* v. *Roberts*, at page 387, it is said that the payment must be made "before the limitation has expired,"—before the six years have run. This was not the question before the court, and the expression is probably an inadvertence. At common law the effect of a part payment never depended on the time when it was made. Whenever made, it had the same probative force as acknowledgment of the existence of the debt, from which the law implied a new promise. In *Sigourney* v. *Drury*, 14 Pick. 387, it was held that a part payment by the maker of a note, after the statute had run, revived it against himself, and his surety as well. The language of the statute is: "*Whenever* any payment of principal or interest has been or shall be made upon an existing contract, * * * after the same shall have become due," etc. But this is not a material question here. As to the first note, it is clear that no period of six years ever elapsed between the time it became due and the bringing of the suit in which there was not a payment of interest. As to the second one, the margin is small, but sufficient. By its terms it was payable one year from date, which was January 23, 1873, and to this the statute (Laws Or. 718, § 5) added three days, called "days of grace." *McMullan* v. *Abbott*, 1 Or. 258. So the note was really not due and payable until January the 26th; and, in default of payment, the right of action thereon accrued on the 27th, and was barred within six years thereafter.

*Fourth.* The court has no jurisdiction of the suit.

Under this head two points are made in the argument:

(1) The assignment is collusive, for the purpose of confirming jurisdiction. The defendants in their answer admit that after the presentation of these claims to the administrators of the estate of Thomas Cross, and their rejection by them, Allen & Lewis, for a valuable consideration, to them paid by the plaintiff, duly indorsed and delivered to the plaintiffs the notes aforesaid, and at the same time assigned to him the mortgages; and Mr. Lewis testifies that he has no pecuniary interest in the mortgages, and that they were transferred to plaintiff in good faith, and without collusion. Nothing appearing to the contrary, this is satisfactory. But it may be well to observe that the defendants, having substantially admitted in their answer the *bona fides* and sufficiency of the transfer, are now in no condition to question or gainsay it. Besides, this defense must have been made by a plea in abatement, prior to answer to the merits, alleging the collusive character of the transfer, and praying judgment that the suit abate in consequence thereof. Rule 40.

(2) These notes were overdue when indorsed to the plaintiff, and therefore were not "negotiable by the law-merchant," within the meaning of the judiciary act of 1875, and as an action could not have been maintained on them in this court by the indorsers, Allen & Lewis, the latter of whom is a citizen of this state, no such action can be maintained by their assignee, the plaintiff. The jurisdiction con-

ferred on this court by section 1 of the judiciary act of 1875, (18 St. 470,) and which includes this case, on account of the citizenship of the parties, is thus qualified: "Nor shall any circuit or district court have cognizance of any suit founded on contract in favor of an assignee, unless a suit might have been prosecuted in such court to recover thereon if no assignment had been made, except in case of promissory notes negotiable by the law-merchant, and bills of exchange." But the contention of the defendants on this point is not supported by the law-merchant, according to which negotiable paper continues such as long as it exists unpaid. At common law no contract was assignable so as to give the assignee a right of action thereon in his own name. In time, by the growth and recognition of what is called the "law-merchant," bills of exchange first, and then promissory notes payable to order or bearer, became exceptions to this rule. They are known as "negotiable paper," which means they may be transferred by indorsement or delivery so as to give the holder a right to sue on the contract in his own name. Attendant on this quality of negotiability are certain consequences; as the liability of the indorser, if due demand is made on the acceptor or maker, and notice given of his default; and the right of a *bona fide* holder, before maturity, to enforce the bill or note against the acceptor or maker, irrespective of any defense which might be set up in an action by the payee thereof. As was said by Mr. Justice STRONG in *Shaw* v. *Railroad Co.*, 101 U. S. 563, from whose instructive opinion therein I have substantially condensed the foregoing statement of the law:

"But none of these consequences are necessary attendants or constituents of negotiability or negotiation. That may exist without them. A bill or note past due is negotiable if it be payable to order or bearer, but its indorsement or delivery does not cut off the defenses of the maker or acceptor against it."

In 1 Daniel on Negotiable Instruments, § 724, it is said, substantially, that negotiable paper may be transferred by indorsement or by delivery, "either before it has fallen due or afterwards;" and, although dishonored for non-payment or non-acceptance, it is still negotiable, and "passes from hand to hand, *ad infinitum*, until paid." And although the direct remedy on the note may be barred by lapse of time, the debt created by it is not thereby extinguished, but still exists for the purpose of enforcing any lien or pledge given to secure its payment, and the transfer of the note after such lapse of time will carry with it this right. *Hickox* v. *Elliott*, 10 Sawy. 422; S. C. 22 Fed. Rep. 13; *Sichel* v. *Carrillo*, 42 Cal. 493; 1 Jones, Mortg. § 1204; *Myer* v. *Beal*, 5 Or. 130.

My conclusion is: (1) These notes, when transferred to the plaintiff, were "negotiable according to the law-merchant," and therefore he can maintain suit on them in this court without reference to the citizenship of his assignors. (2) The transfer of the notes carried

with them the mortgages to secure their payment. The latter are a mere incident of the former. The ownership of the notes gives the plaintiff the right to collect the debt of which they are evidence by a suit in this court to enforce the lien of the mortgages on the land of the surety. (3) And this suit was brought within six years from the last payment of interest on these notes, and is therefore not barred by lapse of time.

The plaintiff is entitled to a decree establishing the amount due on the notes at $36,417.08, and for the sale of the land belonging to Pluma F. Cross in her life-time, and included in the mortgage, for the purpose of paying the same; and the case will be referred to a master of this court to make such sale and application of the proceeds.

### NOTE.

1. MORTGAGE AND NOTES. A statute may be a bar to a note secured by a mortgage, and not bar the mortgage itself. Cerney v. Pawlet, (Wis.) 28 N. W. Rep. 183.

Though limitations may run against a note secured by mortgage after three years, yet an action at law will lie on the covenant (if one) contained in the mortgage, at any time within 12 years. Earnshaw v. Stewart, (Md.) 2 Atl. Rep. 734.

In Cheney v. Cooper, (Neb.) 16 N. W. Rep. 471, in delivering the opinion of the court, MAXWELL, J., says: "The only remaining question is that of the statute of limitations; it being contended that more than five years have elapsed since the notes became due. In Hale v. Christy, 8 Neb. 264, it was held that an action to foreclose a mortgage could be brought at any time within ten years from the time the cause of action accrued. As the statute would run against the notes in five years, it is probable that, after the expiration of that time, the remedy would be against the mortgaged premises alone; but that question does not arise in this case." See, to the same effect, Stevenson v. Craig, (Neb.) 12 N. W. Rep. 1; Gatling v. Lane, (Neb.) 22 N. W. Rep. 453; Herdman v. Marshall, (Neb.) Id. 690.

2. PART PAYMENT. Part payment of a promissory note, an acknowledgment of its validity, and a promise to pay it all, made within the time prescribed by the statute of limitations, take the case out of the statute. Willey v. State, (Ind.) 5 N. E. Rep. 886.

(*a*) *Voluntary Part Payment.* At common law a part payment made by one of the joint makers of a note would keep the debt alive as to all, and would be equivalent to a new promise as to all. Mainzinger v. Mohr, (Mich.) 3 N. W. Rep. 183; Wyatt v. Hodson, 8 Bing. 309.

In most of the states the common-law rule has been changed by statute. Marienthal v. Mosler, 16 Ohio St. 566; Quimby v. Putnam, 28 Me. 419.

In absence of any statute to the contrary, payment by one joint debtor will remove the bar of the statute of limitations as to all, on the ground that each joint debtor is the agent of all the rest for making such payment. National Bank of Delavan v. Cotton, (Wis.) 9 N. W. Rep. 926. See Huntington v. Ballou, 2 Lans. 121.

Payment made upon a joint note by one party thereto, in the presence of the other, who was in fact only a surety, held to take the note out of the statute as to both, in Mainzinger v. Mohr, (Mich.) 3 N. W. Rep. 183.

Part payment or a new promise by one co-surety, under the Michigan statute, will not operate to keep the obligation alive as to the other surety, who was not privy to it, or in any way participated in it. Probate Judge v. Stevenson, (Mich.) 21 N. W. Rep. 348.

Partial payment by one partner, after dissolution of the partnership, will not operate to take the debt out of the statute of limitations as to another partner. Cronkhite v. Herrin, 15 Fed. Rep. 888.

Payment of interest on a note drawn by a firm, by one of the members, after dissolution of the firm, but within six years after the maturity of such note, will renew it as against the statute of limitations. Merritt v. Day, 38 N. J. Law, 32. See, to same effect, Beardsley v. Hall, 36 Conn. 270.

A promise by one partner, after dissolution of the partnership, and before a suit is barred by the statute of limitations, to pay a partnership debt, does not prevent the running of the statute as to the other partners, although the creditor was ignorant of the dissolution. Tate v. Clements, 16 Fla. 339.

Payment by one of two joint makers, where not partners, does not renew the note as to the other makers. Shutts v. Fingar, (N. Y.) 3 N. E. Rep. 588.

A payment by the principal maker of a promissory note, before the statute of limitations has completed a bar, will not prevent the completion of the bar as to a co-maker who is a surety. Knight v. Clements, 45 Ala. 89.

The payment by the principal, year by year, of the interest on a joint and several promissory note will prevent the operation of the statute of limitations in favor of a surety to the note. Schindel v. Gates, 46 Md. 604.

It was said in Thomas v. Brewer, (Iowa,) 7 N. W. Rep. 571, in construing the Nebraska statute, that voluntary part payment is an acknowledgment of the indebtedness, and that an agreement to pay the residue is implied. See Harper v. Fairley, 53 N. Y. 442; Rolfe v. Pillond, (Neb.) 19 N. W. Rep. 970.

Under the Iowa statute, however, partial payment, and indorsement thereof on a promissory note, are insufficient to prevent the bar of the statute of limitations, unless such indorsement is signed by the party to be charged. Parsons v. Carey, 28 Iowa, 431; Harrencourt v. Merritt, 29 Iowa, 71; Roberts v. Kammon, Id. 128.

Mere part payment of a debt, without words or acts to indicate its character, is not evidence from which a new promise to take the debt out of the operations of the statute of limitations may be inferred. Chadwick v. Cornish, (Minn.) 1 N. W. Rep. 55; Brisbin v. Farmer, 16 Minn. 215, (Gil. 187.)

A payment of interest on a barred note by maker, and indorsement thereon by holder, will take it out of the statute of limitations. Yesler v. De Koslowski, (Wash. T.) 8 Pac. Rep. 493.

Where payments are made on an account barred by the statute, it is not necessary there should also be a written promise to make further payment, to keep the claim alive. Miner v. Lorman, (Mich.) 26 N. W. Rep. 678.

It is said in Corliss v. Grow, (Vt.) 2 Atl. Rep. 389, that part payment of a debt barred by the statute of limitations, if made without protest of further liability, is an acknowledgment of such debt at the time of such payment, from which a promise to pay the balance is implied.

It has been generally held that partial payment stops running of statute, whether made before, Engmann v. Estate of Immel, (Wis.) 18 N. W. Rep. 182; see Mainzinger v. Mohr, (Mich.) 3 N. W. Rep. 183; Eaton v. Gillet, 17 Wis. 435; Williams v. Gridley, 9 Metc. 482; Sibley v. Lumbert, 30 Me. 253; Newlin v. Duncan, 1 Har. (Del.) 204; 7 Wait, Act. & Def. 228, 301, 307; Pars. Cont. 353, or after the statute has debarred the claim, Winchell v. Hicks, 18 N. Y. 558; Pickett v. Leonard, 34 N. Y. 175; Harper v. Fairley, 53 N. Y. 442; Carshore v. Huyck, 6 Barb. 583; Graham v. Selover, 59 Barb. 313; First Nat. Bank of Utica v. Ballou, 49 N. Y. 155; Ilsley v. Jewett, 2 Metc. 168; Ayer v. Hawkins, 19 Vt. 26; Wheelock v. Doolittle, 18 Vt. 440; Emmons v. Overton, 18 B. Mon. 643; Walton v. Robinson, 5 Ired. 343; Schmucker v. Sibert, 18 Kan. 104; Shannon v. Austin, 67 Mo. 485; Carroll v. Forsyth, 69 Ill. 127.

A credit entered upon a note by the holder thereof does not revive a barred note, under the construction of the statute of limitations in Georgia, unless he be authorized by the defendant in writing to enter such credit. Stone v. Parmalee, 18 Fed. Rep. 280.

(b) *Enforced Part Payment.* Enforced part payment will not affect the running of the statute. Thomas v. Brewer, (Iowa,) 7 N. W. Rep. 571.

But a part payment made by sale of a collateral by holder, and indorsed on note, will remove bar. Sornberger v. Lee, (Neb.) 15 N. W. Rep. 345; Wheeler v. Newbould, 16 N. Y. 392; Joliet Iron Co. v. Scioto F. B. Co., 82 Ill. 548; Whipple v. Blackington, 97 Mass. 476; Haven v. Hathaway, 20 Me. 345.

(c) *By Partner, Co-Surety, etc.* At common law, a payment made by one of the debtors kept the demand alive as to both, and was equivalent to a new promise by both. Mainzinger v. Mohr, (Mich.) 3 N. W. Rep. 183; Wyatt v. Hodson, 8 Bing. 309.

The rule is different in most if not all the states. Marienthal v. Mosler, 16 Ohio St. 566; Quimby v. Putnam, 28 Me. 419.

In absence of a statute to the contrary, part payment by one joint debtor will remove the bar as to all. National Bank of Delavan v. Cotton, (Wis.) 9 N. W. Rep. 926. See Winchell v. Hicks, 18 N. Y. 558; Huntington v. Ballou, 2 Lans. 121.

A partial payment upon a promissory note by one of the joint and several makers thereof, and indorsed upon it before the note is barred by the statute of limitations, and within six years before suit brought, is inoperative to prevent the running of the statute as to the others. Willoughby v. Irish, (Minn.) 27 N. W. Rep. 379.

Money paid by one of two or more joint debtors on contract, at request of others, stops running of statute as to all. National Bank of Delavan v. Cotton, (Wis.) 9 N. W. Rep. 926; Pitts v. Hunt, 6 Lans. 146; Whipple v. Stevens, 2 Fost. (N. H.) 219.

Payment by one of two joint obligors in presence of the other will take out of statute. Mainzinger v. Mohr, (Mich.) 3 N. W. Rep. 183.

But it has been held that proof of partial payment by one partner, after the dissolution of the partnership, cannot be introduced to stop the running of the statute of limitations. Cronkhite v. Herrin, 15 Fed. Rep. 888.

And it has also been held that a part payment or new promise by one co-surety will

not operate to keep alive the obligation as to a co-surety who was not privy to it, or in no way participated in it. Probate Judge v. Stevenson, (Mich.) 21 N. W. Rep. 348.

(*d*) *Part Payment by Assignee for Benefit of Creditors.* A. being indebted to B. for wages, made an assignment for benefit of creditors, and the assignee paid B. several small sums at various times on account, and finally gave him a check for $4.83, "to be applied as final dividend" on his claim against A. The claim became barred by the statute of limitations before B. sued to recover the balance due. *Held,* that the payments by the assignee did not keep the claim alive, and that B. could not recover. Parsons v. Clark, (Mich.) 26 N. W. Rep. 656.

It is held by the supreme court of Nebraska, Clark v. Chambers, 22 N. W. Rep. 229, that the payment of a dividend by the assignee of an insolvent debtor is not such a part payment of a debt, barred by the statute of limitations, as to take the remainder out of the statutory limitation as against the debtor; citing Marienthal v. Mosler, 16 Ohio St. 566; Stoddard v. Doane, 7 Gray, 387; Pickett v. King, 34 Barb. 193; Roosevelt v. Mark, 6 Johns. Ch. 266.

In Letson v. Kenyon, (Kan.) 1 Pac. Rep. 562, where the maker of a note thereafter made an assignment for the benefit of creditors, and in such assignment scheduled this note and directed his assignee to convert the assigned property into money and pay his debts, and in pursuance thereof the assignee took possession and converted said property into money, and applied the same in part payment of the assignor's debts, this note among the number, it was held that the payment, being one made in pursuance of express directions from the assignor for his benefit, and out of the proceeds of his property, is such a payment as avoids the bar of the statute of limitations under the Kansas statute; and this, notwithstanding the proceedings under the assignment are controlled by the provision of a general statute concerning assignments for the benefit of creditors. The court cite Jackson v. Fairbank, 2 H. Bl. 340; Barger v. Durvin, 22 Barb. 68.