GARDNER v. GARDNER.

1. A surety has the right to stand upon the contract as he made it, and if altered in any respect, it is no longer the contract that he made, and he cannot be bound by it. A valid agreement between the creditor and principal debtor, extending the time of payment, is such an alteration, and will discharge the surety even though not prejudicial to him.
2. Where a creditor receives from the principal debtor payment of interest in advance on a past due note, an agreement to give time is necessarily implied, and the creditor thereby debars himself of suing meantime on the note, and the surety is therefore discharged—unless the creditor can show mistake, or, possibly, an agreement that the right of suit should not be suspended.
3. The question whether a scaled note which matured in 1860, and was credited with payments by the principal debtor down to 1865, should be presumed paid as to the sureties in 1884, raised but not considered. MR. JUSTICE McGOWAN *dissenting.*

Before WALLACE, J., Richland, November, 1884.

The opinion fully states the case.

*Messrs. Andrew Crawford* and *R. W. Shand,* upon the point decided by the court, *cited Brandt Sur. & Guar.,* ch. XIV.; *Ibid.,* §§ 312, 305; 2 *Lead. Cas. Eq.* (last edit.), 1912; *Pitman Pr. & Sur.,* 174; *DeColl Sur. & Guar.,* 407; 1 *Younge & C. Ch.,* 420; 43 *Ind.,* 396; 50 *Id.,* 377; 37 *Ga.,* 385; 26 *Ill.,* 286; 30 *Vt.,* 712; 6 *Whart.,* 440; 5 *Rich.,* 51.

*Messrs. Allen J. Green* and *Abney & Abney,* contra.

November 27, 1885. The opinion of the court was delivered by ,

MR. JUSTICE McIVER. The questions raised by this appeal grow out of the following state of facts: On February 3, 1859, one E. W. Geiger executed his note under seal, with Samuel Gardner and J. H. Threewits as sureties, whereby he promised to pay Jacob Geiger and A. W. Geiger, administrators of Godfrey H. Geiger, deceased, or bearer, the sum of $1,583.53, on February 3, 1860, with interest from date, payable annually. On this note sundry payments are endorsed as follows: February 3, 1860, interest to date; February 3, 1861, interest to date; February 3, 1862, interest to date; June 29, 1863, interest to date and $583.53 on the principal; March 3, 1865, interest to June 29, 1865. It is conceded, however, that the date of this last payment is erroneous, and that the true date is April 27, 1865. All of these payments were made by E. W. Geiger, the principal debtor, to Jacob Geiger, who seems to have had entire charge of the money matters of the estate of his intestate, and the credits endorsed are all signed by him. These payments were all made during the life-time of Samuel Gardner, who died in 1883. Jacob Geiger and Threewits, the other surety, are also dead.

This action was commenced on January 29, 1884, by the plaintiff, who had become the lawful owner and holder of the note above mentioned some time in 1870, against the administrators and heirs at law of Samuel Gardner, deceased, in the nature of a creditor's bill, and the fundamental inquiry is whether the estate of Samuel Gardner is still liable on said note. The defendants rely upon two defences. First, the presumption of payment arising from lapse of time. Second, the discharge of the surety by reason of a change in the original contract, arising from the receipt by the creditor from the principal debtor of interest in advance, after the maturity of the note, which, it is contended, necessarily extended the time of payment to the day to which the interest was paid in advance. The Circuit Judge held that the presumption of payment could not arise, because twenty years had not elapsed from the date of the last payment to the time when the action was commenced;

and that while the receipt of interest in advance was *prima facie* evidence of a contract to give further time to the principal debtor, which would discharge the surety, and in the absence of other evidence would be conclusive; yet if there be other evidence, then it is a question of fact, upon all the evidence, whether there was such a contract. He then says: "There is other evidence in this case, and the facts and circumstances of this case rebut the idea that there was any contract to give further time," and accordingly found, as matter of fact, that there was no such contract. He therefore rendered judgment that the estate of Samuel Gardner was still liable on the note. From this judgment the defendants appeal, alleging error in each of the findings of the Circuit Judge.

We propose to consider, first, the question of the discharge of the surety. There can be no doubt that any alteration of the contract, without the assent of the surety, will discharge him from liability. It is equally certain that any valid agreement between the creditor and the principal debtor, whereby the former legally binds himself to extend the time of payment for any length of time, is such an alteration of the contract as will discharge the surety. It is a mistake to suppose, as has been argued, that the alteration, to be effectual as a discharge to the surety, must be to the prejudice of the surety. The surety has a right to stand upon the contract as he made it; and if it is altered in any respect, it is no longer the contract which he made, and he cannot be held bound by it. As is said by Mr. Justice Story in *Miller* v. *Stewart*, 9 *Wheat.*, 703: "Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract. To the extent, and in the manner, and under the circumstances, pointed out in his obligation, he is bound, and no further. It is not sufficient that he may sustain no injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variation of it, and a variation is made, it is fatal." These views are referred to with approval in *Martin* v. *Thomas*, 24 *How.*, 317, and in *Smith* v.

*United States*, 2 *Wall.*, 234.   See, also, the notes to the case of *Rees* v. *Berrington*, 2 *Lead. Cas. Eq.* (W. & T.), 974.

The cases cited by counsel for respondents to sustain the position that the alteration of the contract must be such as would be injurious in order to operate a discharge, do not establish any such doctrine.   The case of *McLemore* v. *Powell* (12 *Wheat.*, 554) merely decides that an agreement to extend the time of payment, without consideration, will not discharge the endorser, for the simple reason that in such a case there is no valid agreement.   The case of the *United States* v. *Hodge* (6 *How.*, 279) simply decides that the taking of a mortgage as collateral security, in which time is given for the enforcement of such collateral security, where there is no valid agreement to give time to the principal debtor personally, does not discharge the sureties on the original debt.

In that case the action was on a postmaster's bond for twenty-five thousand dollars, given in 1836, and the defence was that the principal in the bond had, on August 15, 1837, given a mortgage to secure to the post-office department payment of a sum not exceeding sixty-five thousand dollars, or such sum as might be found due on a settlement, from and after six months from the date of the mortgage, and it was claimed that time having thus been given to the principal the sureties were discharged. But the court said, "Giving time for payment, to discharge the endorser, must operate upon the instrument endorsed by him. Now, if the post-office department had, by the mortgage, suspended the right of action on the bond for the time limited in the mortgage, it might have released the sureties.   But no such condition is expressed, and none such can be implied."   Here the principal entered into two obligations, and as the latter in no way affected the former, it could not, of course, have the effect of altering the contract evidenced by the bond upon which the sureties were sued, and their contract not having been changed, they could not claim to be discharged.   As the court said: "The remedy on the collateral instrument is wholly immaterial, unless it discharges or postpones that on the original obligation.   There is no such condition in the mortgage under consideration, and

consequently it can in no respect affect or suspend the remedy of the post-office department on the bond."

The cases of *Jackson* v. *Patrick*, 10 *S. C.*, 197, and *Rosborough* v. *McAliley*, 10 *S. C.*, 235, have also been cited to sustain respondents' position, but an examination of those cases will show that they afford no support to the idea that the alteration of the contract, which will discharge a surety, must be such an alteration as will be injurious to the surety. In making the quotation from the former case to sustain the position contended for, the significance of the words "either" and "or" seems to have been overlooked. The language quoted is as follows: "That in order to discharge the surety, the creditor must do some act of positive character, either by entering into a valid contract with the principal debtor, varying the terms of the obligation by extending the time for its performance, or otherwise, or by doing some other act prejudicial to the interests of the surety, or he must omit, after demand from the surety, some duty imposed upon him whereby loss results to the surety, is a proposition too well settled to admit of dispute."

Now, the obvious meaning of this language is, that there are three things which will discharge a surety: First, a valid contract between the creditor and principal debtor, "varying the terms of the obligation by extending the time for its performance, or otherwise." Second, "doing some other act prejudicial to the interests of the surety." Third, omitting, "after demand from the surety, some duty imposed upon him (the creditor), whereby loss results to the surety." So that when a surety claims his discharge upon the first ground, it is only necessary for him to show that the contract into which he entered has been changed, either by extending the time for its performance, altering the rate of interest, or in any other way, and it is wholly immaterial to inquire whether such alteration is prejudicial to him, for the simple reason that a man cannot be made liable upon a contract different from that which he entered into. In the language of Judge Story: "He has a right to stand upon the very terms of his contract." But if he claims a discharge upon either of the other two grounds, then he must show that the

creditor has done or omitted, after demand, some act which has resulted injuriously to him.

In the case of *Rosborough* v. *McAliley*, nothing was said as to the discharge of a surety by an alteration of the contract, the question there being whether the creditor had done a positive act to the prejudice of the interests of the surety. Nor do the cases of *Hampton* v. *Levy*, 1 *McCord Ch.*, 107, and *Lang* v. *Brevard*, 3 *Strob. Eq.*, 64, likewise relied upon, touch the point here under consideration, for in those cases the discharge of the surety was not claimed upon the ground of the alteration of the original contract, but upon the ground that the creditor had omitted to record the mortgages given to secure the debt.

Our next inquiry is as to the effect of the act of the creditor in receiving payment in advance of the interest after the maturity of the debt. Does this necessarily imply an agreement on the part of the creditor to extend the time for payment to the day up to which he has received the interest, or is it, as the Circuit Judge held, merely *prima facie* evidence of such agreement, which may be rebutted by other evidence? This is a new question in this State and the decisions elsewhere are conflicting. It seems to us that where a creditor receives from the principal debtor after the maturity of the note or other obligation, payment of interest in advance, this necessarily implies an agreement on the part of the creditor to give time to the principal debtor, and that he thereby debars himself of the right to sue upon the original contract until the time arrives, up to which he has received interest in advance.

Interest for money is defined to be "the compensation which is paid by the borrower to the lender, or by the debtor to the creditor, for its use." 1 *Bouv. Law Dict.*, 652. Hence when a creditor receives interest on his debt up to a certain period, he receives from his debtor compensation for the use of the money by the debtor up to that period, and until that period arrives he cannot demand payment of the money, for by receiving compensation for its use by the debtor for a specified time, he has, by necessary implication, agreed that the debtor shall have the use of the money for which he has paid for the time specified; for the payment of the money certainly constitutes such a considera-

38

tion as will make the agreement valid and legally binding. There can be no question of intention, for parties are presumed to intend the necessary legal effect of their acts.

If, therefore, a creditor knowingly receives from his debtor interest in advance on a note, after maturity, he is necessarily presumed to have extended credit to his debtor during the period for which he has voluntarily received compensation for the use of the money then due. Otherwise a creditor who should, after the maturity of his note, receive the interest on it for twelve months in advance, might, the very next day, bring suit against his debtor, and in due course of law recover judgment and enforce the payment of the very money the use of which for twelve months the debtor had already bought and paid for before the period had elapsed during which the debtor had by purchase acquired the legal right to its use. Surely, no court of equity would allow this; and hence we think that by such a transaction the creditor necessarily ties his own hands and debars himself, by a valid agreement, from the right of action for a specified time, which it is conceded would discharge the surety.

These views are well supported by the authorities cited in the argument for appellants, especially the case of *Blake* v. *White*, 1 *Younge & C. Ch.*, 420. In that case the bond became due in 1818, and in October of that year the creditor received the interest up to January 1, 1819. Lord Abinger said: "Could he then in the interim have been allowed by a court of equity to bring his action on the bond? I think not. It is admitted that in the case of a principal only, without a surety, if the debtor had given six months' interest in advance, a court of equity would interfere to stop the action. If in such a case the time for payment of the interest could be explained consistently with the action, that would alter the state of the case; but if it appeared simply that the six months' interest had been given, what could the imagination suggest but a contract *ipsissimis verbis* that the creditor should not sue for that time? Besides, the interest being paid, would a court of equity endure that the creditor should put the interest into his pocket and next day sue for the principal? If that be so as between the principal debtor and the obligee, the same principles will apply to the surety. The question here is

whether the party did not preclude himself from suing on the bond by receiving by anticipation the interest due between October and January. The shortness of that period cannot affect the question." And it was in effect held that the surety was discharged by such extension of time to the principal.

It may well be that if, through mistake, the creditor should receive more interest than was then due, or if, possibly, at the time the interest was paid in advance, it should be made to appear that it was agreed between the debtor and creditor that this should not have the effect of suspending the creditor's immediate right of action, the necessary implication resulting from the payment of interest in advance would not arise, but this it is incumbent upon the creditor to show. What facts and circumstances the Circuit Judge relied upon as rebutting the idea that there was a contract to give further time do not appear from his decree. We think his error was one of law in not holding that the receipt of interest in advance was conclusive evidence of such contract, unless the creditor showed that it was a mistake, or that there was a special agreement at the time that his immediate right of action on the note should not be suspended. There certainly was no evidence of any such special agreement, and we do not think there was any evidence of a mistake.

The credit endorsed on the note shows unmistakably that the creditor knew that he was receiving interest in advance, and all the circumstances point to the same conclusion. The money was undoubtedly received on April 27, 1865, as shown by the date of his letter to E. W. Geiger, but at what particular time the last credit was endorsed upon the note does not appear. This endorsement was proved to be in the hand-writing of Jacob Geiger, the creditor, and the terms in which it is expressed leave no doubt of the fact that he intended to receive that money as interest up to a future period. He no doubt knew that the preceding payment, which bears date June 29, 1863, had reduced the balance due on the note to one thousand dollars, and we cannot doubt that, when the money was offered to him in April, 1865, his intention was to receive the simple interest on that sum for two years, one hundred and forty dollars, the amount acknowledged in his letter written the day the money was paid.

We think, therefore, that the surety was discharged, and the plaintiff not being a creditor of the estate of Samuel Gardner, cannot maintain this action against his representatives.

Having reached the conclusion that the surety was discharged in 1865 by the act of the creditor in giving time to the principal debtor, the other question as to whether the note should be presumed paid from lapse of time cannot arise, and need not, therefore, be considered.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the complaint be dismissed.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE MCGOWAN, *dissenting.* E. W. Geiger, together with his sureties, Samuel Gardner and J. M. Threewits, executed a sealed note to Jacob Geiger and A. W. Geiger, as administrators, for $1,583.53, which was due February 3, 1860, with interest from date, and payable annually. On this note there were endorsed receipts of payments as follows: February 3, 1861, interest to date; February 3, 1862, interest to date; June 29, 1863, interest to date, and $583.53 on the principal; March 3 (really April 27), 1865, interest to June 29, 1865. It seems, therefore, that on April 27, 1865, the "annual" interest for two years—from June 29, 1863, to June 29, 1865, was received. At the time the money was received the two years had not actually expired by two months, as to which two months, May and June of 1865, the interest was received in advance; and it is now contended that such receipt of the interest alone must be construed into a contract on the part of the creditor not to sue during those two months, which, although in no way injurious to the sureties, discharged them and absolutely absolved them from all obligation to pay the note. In this I cannot concur for several reasons.

First. It is well settled that mere indulgence will not release the surety. In order to have that effect there must be a valid agreement for indulgence between the creditor and the principal debtor, obligatory on the creditor. *Witte* v. *Wolfe*, 16 *S. C.*, 274, citing *Parnell* v. *Price*, 3 *Rich.*, 121, and other cases. I

think no such contract was shown in this case, either expressly or by proper implication. The mere receipt of the interest in advance was surely not a contract to forbear suing, even for the two months covered by the interest received. To constitute a contract intention is necessary, and it is not claimed that there was any such express contract; but it is said that there was such implied contract—that the receipt of the interest necessarily showed that there was such a contract. It seems to me that in no sense could that be more than evidence tending to prove such a contract, and evidence only through a process of reasoning which probably was not in the minds of the parties, viz., that as the receipt of interest in advance prevents suit for the period covered by it, therefore he who takes it presumably intended to make such a contract.

It strikes me, when we consider the very serious consequences of absolving sureties from their solemn contract, that this whole view is strained; manufacturing a contract, which is matter of intention, by a process of logic that most probably never entered the heads of the parties assumed to have made it. But assuming that it was evidence bearing upon the question of contract, it certainly could not be more than *prima facie* evidence and rebuttable by other evidence. The parties might assuredly, by express declaration, negative the inference of such a contract, and why may it not be negatived by other proof as strong as an express declaration? The rule, in reason, cannot be stronger than as stated by Mr. Brandt: "The general rule is that the reception of interest on a note is *prima facie* evidence of a binding contract to forbear and delay the time of payment, and no suit can be maintained against the maker during the period for which interest has been paid, unless the right to sue has been reserved by the agreement of the parties. The payment of the interest in advance is not of itself a contract to delay, but is evidence of such a contract; and while this evidence may be rebutted, yet, in the absence of any rebutting evidence, it becomes conclusive." *Brandt Sur.*, § 305, and authorities.

Second. The Circuit Judge held that "there is other evidence in this case, and the facts and circumstances of the case rebut the idea that there was any contract to give further time. I there-

fore, upon full consideration of all the evidence in this case, am clearly of opinion, and conclude as matter of fact, that there was no such contract.    It follows as a conclusion of law that Samuel Gardner, the surety, has not been discharged, and is still bound." In this finding I entirely concur.    In brief, the facts were as follows: In April, 1865, the war was in its last agonies.    Everything was in utter confusion.    The courts were disorganized, and there was actually on the statute book a stay law, forbidding the service of any process for the collection of debts.    This very note, along with other papers, was lying buried in order to escape robbery, and was therefore not in the possession of the creditor. But the debtor, E. W. Geiger, like most debtors at that time, was anxious to pay his debt in worthless Confederate currency. He did not go himself to see his creditor, Jacob Geiger, but he sent by one "Honald a roll of Confederate money to pay the debt."    Jacob Geiger said that "he would take the interest, but he had no use for the balance, and to carry it back to Edward" (E. W. Geiger).

The note was not before them to ascertain precisely what ·interest was due, but knowing that it was payable "annually," he consented to take $140, and at the same time he wrote to his cousin as follows: "Before the Yankees came here, I sent the notes and bonds off that was in my possession, including your note, and as soon as I receive the notes again I will give you credit on your note for the amount which I received to-day from Mr. David Honald, which was one hundred and forty dollars. If you stand in need of this money which you sent to-day, send back for it, as I could do without it," &c.    It does not appear when the note was brought back from its place of hiding, or the exact time of entering the last receipt on it, but it was probably some time afterwards (possibly after June 29), as it was made by mistake as being received on March 3, instead of April 27, 1865.

These were the circumstances under which the worthless Confederate money was shoved upon the creditor in payment of the interest, and it seems to me that the imagination can hardly conceive of any stronger to negative the idea of a contract not to sue until after June 29, 1865.    How can we presume that the creditor by receiving the interest promised not to do what was

already forbidden by the law as it stood upon the statute book, and which from the absence of courts was simply impossible? Even if such contract necessarily arose by implication, it is at least doubtful whether the worthless article received as money could constitute a good and sufficient consideration to make it obligatory. See *Cornwell* v. *Holly*, 5 *Rich.*, 47, as to usury.

Third. But has this court the right to review and reverse the finding of the Circuit Judge upon a question of fact? We certainly would not have any such right if the case were a simple action at law to recover the note, which it really was in substance. It is true that the surety, Gardner, being dead, the proceeding was thrown into the form of an action to marshal the assets of his estate, which is equitable in its nature. I cannot, however, see clearly how this accidental circumstance should change the nature of every issue that may arise in the case, such as the alleged payment or discharge of a note presented. I am inclined to think that when such issue arose, the parties, notwithstanding the form of the proceeding, had a right to the finding of a jury. "When the trial is before a jury, this court in no case has the authority to review questions of fact." *Wait Anno. Code*, 662; *Parker* v. *Jarvis*, 3 *Keyes*, 271. Where such a question, by the consent of parties, is decided by a judge, his decision should stand as a special verdict. The nature of the issues are not always determined by the form of the proceeding. See *Johnson* v. *Clarke*, 15 *S. C.*, 80.

But passing this, and assuming that the issue was one really "in chancery," I am not able to see that instead of an issue of fact it was one of law. Whether the other proof and circumstances are sufficient to overthrow a *prima facie* case, is surely a question of fact. Judge Wallace so considered and decided in this case, and it seems to me that his decision should stand. "Where the testimony is conflicting, and the Circuit Judge has, upon weighing it, reached a conclusion which can be supported by the testimony, we will not interfere, although there may be other testimony in the case pointing to a different conclusion. We are not to substitute our judgment for that of the Circuit Judge as to the comparative weight of the testimony. It is only where there is no testimony to support his conclusion, or where

manifest error is proven, that this court will undertake to over-rule a finding of fact by a Circuit Judge." *Gary* v. *Burnett*, 16 *S. C.*, 633.

In the view that the Circuit Judge was right both as to the law and the facts, his judgment should be affirmed.

Judgment reversed.