Opinion.

# Wytheville.

ЕDMONSON & REEKES, RECEIVERS v. POTTS' ADMINISTRATOR.

June 9, 1910.

Absent, Harrison, J.

1. PRINCIPAL AND SURETY—*Notice to Sue Under Code, Sec. 2890—Sufficiency.*—A notice to sue under section 2890 of the Code, in order to release an endorser on a note, must comply substantially with the statute, and must show a clear, unequivocal and distinct demand upon or command to the creditor "forthwith to institute suit" upon the note. A notice to take such action as is necessary to get the endorser's name off the note, or to sue *one* of the parties to the note, is not a sufficient compliance with the statute.

2. APPEAL AND ERROR—*Decision of Trial Court Without a Jury.*—Where all matters of law and fact were submitted to the trial court, without the intervention of a jury, the judgment of this court, upon a writ of error, will be final.

Error to a judgment of the Circuit Court of Mecklenburg county in an action of debt. Judgment for the defendant. Plaintiffs assign error.

*Reversed.*

The opinion states the case.

*W. E. Homes, E. C. Goode, C. T. Baskerville, Chas. J. Faulkner, Jr.,* and *E. P. Buford,* for the plaintiffs in error.

*Wood Bouldin,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The material question involved in this case, and the only one that it is necessary to decide, in the view we take of the

case, is whether or not the notice to sue, relied on by the defendant as barring the plaintiffs' right of recovery, was sufficient under the provisions of section 2890 of the Code of 1904.

That section, so far as relevant to this case, is as follows: "The surety or guarantor or endorser (or his committee or personal representative) of any person bound by any contract may, if a right of action has accrued thereon, require the creditor, or his committee or personal representative, by notice in writing, forthwith to institute suit thereon   *   *   *"

The contract sued on in this case is a negotiable note, made by the Mecklenburg Live Stock Company, for two thousand dollars, payable to and indorsed by E. H. Potts, the defendant's intestate, and C. W. Harris and B. E. Cogbill, and is owned by the Bank of Mecklenburg, of which the plaintiffs are the receivers.

The notice to sue relied on by the defendant was not a formal notice to the bank, but was contained in letters written by the defendant, as the administrator of E. H. Potts, deceased, to the cashier and president of the Bank of Mecklenburg. Neither the letters nor copies thereof were introduced in evidence, but the writer of the letters and the officers to whom they were written respectively testified to their contents.

The defendant stated that some time after his decedent's death he was informed of the existence of the note sued on, and that it was held by the Bank of Mecklenburg. He about the same time learned that his decedent had made a settlement with Mr. Cogbill, one of the indorsers on the note, through his attorney, Mr. Faulkner, who was also president of the bank, in which his decedent had paid Mr. Cogbill his share of the note. The defendant thereupon wrote "the cashier of the bank at Boydton and explained the nature of the settlement and asked that such steps be at once taken by the bank as would release Mr. Potts' name on the note as surety. Subsequently I wrote to Mr. Faulkner as president

of the bank and urged that he take such action as would release Mr. Potts' name. I frequently talked with Mr. Faulkner with regard to his bringing suit against Mr. Cogbill in order that the matter might be closed as I as administrator desired to close the administratorship of the Potts estate. The notices were in writing to Mr. Faulkner as president of the bank to bring suit or take such action against Cogbill so as to liberate Mr. Potts' name as surety." He further testified that he could not recall "the language of the different notices, but they all urged the bank to take such action as was necessary to get Mr. Potts' name off the note."

Mr. Overby, the cashier of the bank, in testifying to the contents of the letter to him, said that he could not state when he "received notice to bring suit, though it was some time after the maturity of the note. My recollection of the contents of *notes* (notice), which was in writing, was to the effect that Mr. Gregory as administrator wished the bank to take such steps as would relieve Mr. Potts' estate of any responsibility as endorser on note."

The testimony of the president of the bank, Mr. Faulkner, as to the contents of the letters written to him is as follows: "I remember on one occasion his (the defendant) writing to me in connection with some other matter that he wanted Mr. Potts' name gotten off the paper, and again last fall he not only spoke to me in person about it, but he wrote me a letter especially on the point in which he stated that he wanted us to bring suit against Cogbill on the note. About the time I received this last letter, Mr. Cogbill had already gotten into his troubles and I saw Mr. Gregory and asked him if he thought best to bring suit. He replied that he did not think that it was any use in bringing it now, that I had waited until too late." He further stated in reference to the conversations with the defendant and the contents of the letters received by him, that in every instance they were to the effect

that the defendant "wished the bank to get Mr. Potts' name off the paper."

Giving the defendant the benefit of the most favorable construction (as he is entitled to since the case is heard here as on a demurrer to the evidence) which can be placed upon his letters to the officers of the bank, as their contents are disclosed by the record, did they or either of them contain a clear and explicit requirement for the bank "forthwith to institute suit" on the note?

Unless the letters relied on as giving notice contained such a requirement to sue, the provisions of section 2890 of the Code were not complied with. That section is very stringent in its terms. The effect of failure to institute suit against every party to such contract who resides in this State and is not insolvent, after notice, is an absolute forfeiture of all claims against every surety upon the contract. To the surety giving the notice it is an absolute extinguishment of the debt. Code, sec. 2891. *Davis Admr.* v. *Snead*, 33 Gratt. 705, 708-9. Before the creditor should be held to have forfeited all his rights under the contract against all the sureties for a failure to forthwith institute suit upon the contract, it ought clearly to appear that the notice relied on to have that effect required suit forthwith to be instituted on the note.

Notice "to take such action as was necessary to get Mr. Potts' name off the note," was not a clear and explicit requirement to sue upon the note, as the surety might be relieved from liability on the note in various other ways. Neither was the direction or request in the letter to bring suit against Cogbill, *one* of the parties to the note, a clear and explicit requirement to sue upon the note. The cases are numerous which hold that notice to discharge a surety must comply substantially with the statute and must show a clear, unequivocal and distinct demand upon or command to the creditor to institute suit upon the contract. See *Savage's Admr.* v. *Carleton*, 33 Ala. 443; *Kaufman* v. *Wilson*, 29 Ind. 504;

*Bates, &c.,* v. *State Bank,* 7 Ark. 394, 46 Am. Dec. 293; *Parish* v. *Gray,* 1 Hump. (Tenn.) 88; *Shimer* v. *Lane,* 47 Penn. St. 268; *Warner* v. *Beardsly,* 8 Wend. (N. Y.) 194; *Moore* v. *Peterson,* 64 Iowa 425, 20 N. W. 744.

It follows from what has been said that we are of opinion that the notice relied on to bar the plaintiff's right against the defendant was not sufficient, and that the trial court erred in not so holding. Its judgment must, therefore, be reversed, and as all matters of law and fact were submitted to the trial court for its decision, this court will enter such judgment in favor of the plaintiffs as the trial court ought to have entered.

*Reversed.*