### GRAHAM *v.* PEPPLE.

Division B. July 2, 1923. Suggestion of Error Overruled July 21, 1923.

[97 South. 180. No. 23420.]

1. PRINCIPAL AND SURETY. *Rquisite of notice to creditor to sue effecting discharge of surety from fixed legal liability stated.*

Under section 3731, Code 1906 (section 2907, Hemingway's Code), a notice to the creditor to sue, which will discharge a surety from his fixed legal liability if not complied with, must be clear and explicit, and must amount to a demand that the creditor commence and prosecute legal proceedings against the principal debtor.

2. PRINCIPAL AND SURETY. *Agreement to extend time of payment must be, positive, and supported by new and valuable consideration, in order to release surety.*

Under section 2698, Hemingway's Code, mere forbearance or indulgence will not release a surety, but an agreement to extend the time of payment which will release a surety must be a positive, binding agreement, supported by a new and valuable consideration, and, in order to effect his release thereby, the burden is on the surety to show a binding agreement based upon some new and valuable consideration, which is sifficient to preclude the creditor from enforcing the instrument during the period covered by the extension.

APPEAL from circuit court of Sunflower county.

HON. S. F. DAVIS, Judge.

Suit by A. C. Graham against W. O. Pepple. From a judgment for defendant, plaintiff appeals. Reversed and judgment here for appellant.

*Shands, Elmore & Causey,* for appellant.

Let us first consider the provisions of section 3731 of the Code of 1906. This statute provides that if an accommodation endorser or surety intends to invoke the statute

to obtain a release from his contract, he must "give notice in writing to the creditor to commence and prosecute legal proceedings aganst the principal debtor," and it further provides that "if the creditor fails to commence legal proceedings by the next term of the court in which the same may be instituted to be held after the expiration of thirty days from the giving of the notice, and to prosecute the same to effect, the surety who shall have given the notice, shall be discharged from liability."

Attention is directed to a letter which the appellant wrote the appellee on December 24, 1920, making demand of the appellee for the payment of the note. In this alleged notice to the appellant it is suggested that he proceed against the makers of this note and against the property secured by the deed of trust to get his money. This notice is not such a notice as is contemplated by the statute. It is not such a notice as will arrest the attention of the creditor and cause him to commence the proceeding to protect himself against the forfeiture. We have not been able to find a case decided by the supreme court of Mississippi which has determined the sufficiency of a notice under our statute, but we find that a majority of the states of the United States have statutes with similar provisions and in many instances, the statutes of other states are the same as in this state. We therefore suggest that decisions from courts of sister states should be persuasive with the court in deciding this proposition. We call the attention of the court to the following cases: *Benge's Adm'r* v. *Eversole,* 160 S. W. 911; *Edmonson* v. *Potts,* 68 S. E. 254; *Moorman* v. *Vass,* 83 N. E. 76.

We will now discuss that part of the defense in which the appellee says that the appellant, by agreement with Bolen and Miller, extended the time for the payment of the note, thereby releasing the appellee as an endorser. By such plea, the appellee invokes section 2698 of Hemingway's Code, same being section 120 of Brannan's Negotiable Instruments Law appearing at page 324. Even

before the above statute was enacted the law as announced in the statute was the law of Mississippi, and I suspect it has been the law since man became civilized. We direct the attention of the court to a case decided in 1840 styled *Newell* v. *Hamer,* 4 How. 684, which case was subsequently followed by the court in *Wade* v. *Stanton,* 5 How. 631; *Miller, Sheriff,* v. *Lewis,* 103 Miss. 598, 60 So. 654; *Banks* v. *Gilvin,* 152 S. W. 652; *Dies* v. *Wilson County Bank,* 165 S. W. 248; *Thompson* v. *Wynne,* 127 Miss. 773, 90 So. 482; *John M. Parker & Co.* v. *Guillot et al.* 42 So. (La.) 782. We, therefore, insist that the indulgence granted to Bolen was a favor extended to him by his creditor without any consideration whatever. Bolen did not offer consideration for the favor and Graham accepted no offer and received no consideration. This is one of those indulgences granted every day in the year by a creditor to his debtor.

Pepple's liability was fixed when the note became due. Notice to pay and protest was waived in the note by the endorsers. It was his duty to see that Bolen and Miller paid the debt, or pay it himself. The rule announced by Vol. 3, R. C. L., page 1273, section 503, therefore, applies. See also 3 R. C. L., page 1120, paragraph 336; *Rogers* v. *Detroit Savings Bank,* 18 L. R. A. 539, note G, citing numerous cases under the heading "Exhausting Security;" *First National Bank* v. *Wood,* 71 N. Y. 405, 27 Am. Rep. 66; *Bank* v. *Shields,* 55 Hun. 274, 8 N. Y. Supp. 298; *Pearl* v. *Cartwright,* 81 Miss. 300.

*Franklin & Easterling,* for appellee.

The appellant, having been notified in writing to proceed against the makers of the note, Mr. Pepple as a surety only on said note, thereby became discharged from all further liability under the expressed terms of section 3731, Code of 1906, Hemingway's Code, 2907. It will be observed from the reading of the statute set out herein that all the law requires of a surety or an accommodation endorser

for another is that such surety, at any time after the debt has become due or liability incurred, give notice in writing to the creditor to commence and prosecute legal proceedings against the principal debtor, if living and resident within this state, for the recovery of the debt. That is all that is required on the part of a surety. This is a remedial statute and all that is required is that there be a substantial compliance with this requirement. The authorities cited by counsel for appellant are to this effect, and in fact this is the correct rule. *Iliff* v. *Weymouth*, 40 Ohio St. 101; 6 Words & Phrases, page 5631; *Planters Bank* v. *Houser*, 57 Ga. 140, 141; 8 Words & Phrases, page 7765. In our view of the law no exact phraseology is necessary to comply with the statute. All that a surety is required to do is to give notice substantially in the terms of the statute. The notice in this case clearly informs Mr. Graham, the creditor and holder of the note, to proceed against the makers of the note and against the property secured by the deed of trust to get his money. Mr. Graham did not misunderstand the notice and we contend was not misled by it. See *Prescott National Bank* v. *Head*, 11 Ariz. 213, 21 Ann. Cas. 991. We earnestly contend that considering the verbiage, intent, and purpose of our statute the notice given in the instant case is a substantial compliance with the statute and that its purport was fully understood by the creditor as shown by his letter in reply to the notice. We, therefore, most respectfully submit that on this point the peremptory instruction for the defendant was properly given.

We contend in the light of section 527 of Hemingway's Code, section 744 of the Code of 1906, that the notice under the general issue clearly alleging that the plaintiff had extended the note without the knowledge or consent of the endorser, the appellee here, it became necessary for the plaintiff to reply to this notice if he intended to disprove any of the facts averred in said notice, or to prove any fact in avoidance thereof.

As to what consideration is sufficient to support an agreement of extension, we call the court's attention to the case of *Govan* v. *Binford*, 25 Miss. 151. See also *Moore* v. *Redding*, 69 Miss. 841, 13 So. 849. This court deals with the release of a surety in the case of *Miller* v. *Lewis*, 103 Miss. 598, 60 So. 654.

COOK, J., delivered the opinion of the court.

This suit was begun in the circuit court of Sunflower county by the appellant, plaintiff in the court below, against A. H. Jenkins, on whom process was not served because he was a nonresident, W. B. Bolen, O. C. Miller, and the appellee, W. O. Pepple. The suit is based on a promissory note, which was signed by the appellee and said Bolen and Miller, and delivered to the said A. H. Jenkins, to evidence the sum owing Jenkins as the purchase money for a grist mill and other machinery, and which was indorsed by Jenkins and transferred in due course of trade, for value, before maturity, to the appellant. A contract was executed contemporaneously with the note evidencing the sale of the grist mill and other property from Jenkins to Bolen and Miller, in which the note is described and the terms and conditions of the sale set forth.

The appellant, in his declaration, exhibited the said note, claimed a lien securing it under chapter 83 of the Code of 1906 (sections 2436, 2437, and 2438 of Hemingway's Code) for the purchase money for the property, and filed his affidavit designating the said property, and averring that it was liable for the said indebtedness. A writ of summons and seizure was issued and personally served on the appellee and on the said Bolen and Miller, and the sheriff took possession of the property. On the return day pleas were filed by the appellee, and a default judgment was entered against Bolen and Miller, and the property was condemned and ordered to be sold to satisfy the said

judgment, and by agreement of appellant and appellee the property was sold, and the net proceeds of the sale, amounting to three hundred and thirty-seven dollars was applied as a credit on the note, leaving a balance due on the note of nine hundred and seventy-three dollars and seventy-two cents. At the trial there was no dispute about the amount of the balance due on the note, but the appellee disputed his liability to pay this balance by a notice filed under the plea of the general issue averring, in substance: First, that he was an accommodation indorser. on the note; that after the maturity of the note he gave the appellant notice as provided by section 3731, Code of 1906 (section 2907, Hemingway's Code), to commence and prosecute legal proceedings against the said Bolen and Miller, and because the appellant failed to commence such proceedings by the next term of the circuit court held after the expiration of thirty days from the giving of the notice, that he was thereby discharged from further liability; and, second, that Bolen and Miller were solvent at the time the note became due; that after the note became due the appellant extended the time for the payment of the note without the knowledge or consent of the appellee, and neglected to take steps to collect the same; that because of such non-action of the appellant the property given as security decreased in value; that, if action had been taken when the note became due, the debt could have been paid by a sale of the property, and the appellee would have been relieved of the payment of the note, and that the extension of time granted to Bolen and Miller precluded the appellee, as an indorser on the note, from taking possession of the property and selling it to pay the note.

In the presentation of his defense the appellee offered in evidence certain letters, which were identified by the appellant, the first one reading as follows:

"Ruleville, Miss., Jan. 1st, 1921.

"Mr. A. C. Graham, Cleveland, Miss.—Dear Sir: Mr. W. O. Pepple, of this place, has turned over to us for

attention your letter to him, of date December 24th, in regard to the note given to W. B. Bond and O. C. Miller to A. H. Jenkins, secured by deed of trust on personal property. We take the position that Mr. Pepple is not liable, but would suggest to you that you proceed against the makers of this note and against the property secured by the deed of trust to get your money. We would suggest that you take it up direct with Mr. Bond or Miller, and perhaps they could straighten the matter up with you.

"Yours very truly, FRANKLIN & EASTERLING."

To this letter appellant replied as follows:

"Cleveland, Miss., 1/4/1921.

"Franklin & Easterling, Ruleville, Miss.—Dear Sirs: Yours of January 1st to hand and noted. Will say am much surprised that you take the position that Mr. Pepple is not liable, while his signature speaks for itself, and principally upon his signature I based the validity of the note. I have taken this matter up with Bolen a time or two, and have indulged from time to time at his request, and yet have no results (satisfactory) and feel that I have extended to Mr. Pepple the courtesy due him, in giving him notice before procedure to collect by distress, which carries an extra ten per cent. and means one hundred dollars more. Will say now that it is up to me to begin action unless something is done in a way of settlement of this matter, and will say it is very unsatisfactory to me to do so.

"Yours very truly,

A. C. GRAHAM."

On September 27, 1920, the appellant addressed the following letter to W. B. Bolen:

"Cleveland, Miss., 8/27/20.

"Mr. W. B. Bolen, Ruleville, Miss.—Dear Sir: Yours of recent date received and noted, and as requested I have instructed the bank here to hold the note till Oct. 1st, at which time I hope you will be in shape to take up, as at

that date I have some paper maturing, and will depend upon this paper to be paid promptly.

"Yours very resp.,
"A. C. GRAHAM."

Again on October 8, 1920, the appellant addressed a letter to W. B. Bolen which reads as follows:

"Cleveland, Miss., 10/8/1920.

"Mr. W. B. Bolen, Ruleville, Miss.—Dear Sir: Yours of 6th inst. received and noted and while I would be more than glad to carry this paper, just now it is impossible, as I am due this money to the bank here and I would be very glad that you make arrangements there to take it up; as requested have extended the time from Sept. 1st to Oct. 1st, which I could do at that time, as my papers did not mature till Oct. 1st, and the bank is demanding payment, and under circumstances would more than appreciate it if you would make payment, which I am sure you can do with your indorsers.

"Yours very respt.,
A. C. GRAHAM."

The appellee testified that he signed the note as an indorser and turned it over to Bolen and Miller to be negotiated by them, and that they paid no more attention to the note or security, and thought the note had been paid until he received a letter from appellant which was dated December 24, 1920. At the conclusion of the testimony both parties requested peremptory instructions, and, the court having granted the peremptory instruction requested by the defendant, appellee, this appeal was prosecuted from the judgment entered in accordance therewith.

The first point presented for decision is whether the letter from Franklin and Easterling, attorneys, to appellant, dated January 1, 1921, and hereinbefore fully set forth, was a sufficient compliance with section 3731, Code of 1906 (section 2907, Hemingway's Code), to discharge the appellee from all further liability as indorsers upon the failure of appellant to commence legal proceedings against

the debtor by the next term of court held after the expiration of thirty days from the receipt of the letter.

Section 3731, Code of 1906 (section 2907, Hemingway's Code), reads as follows:

"Any person bound as surety or accommodation indorser for another, may, at any time after the debt has become due or liability been incurred, give notice in writing to the creditor to commence and prosecute legal proceedings against the principal debtor, if living and resident within this state, for the recovery of the debt; and if the creditor, fail to commence legal proceedings by the next term of the court in which the same shall be instituted, to be held after the expiration of thirty days from the giving of the notice, and to prosecute the same to effect, the surety who shall have given the notice shall be discharged from liability. It shall not be lawful to plead or to give in evidence under this section a notice not in writing, and any act of the creditor shall not be a waiver of notice in writing as herein required."

It will be noted that only a written notice may be pleaded or given in evidence under this section, and that no act of the creditor shall be deemed a waiver of a notice in writing. If any surety or accommodation indorser intends to invoke this statute to obtain a release from his contract, he must "give notice in writing to the creditor to commence and prosecute legal proceedings against the principal debtor," and when the required notice has been given the surety who shall have given the notice shall be discharged from liability unless the creditor shall "commence legal proceedings by the next term of the court in which the same may be instituted to be held after the expiration of thirty days from the giving of the notice," and shall "prosecute the same to effect." In the case at bar, we do not think the letter to appellant is such notice as is contemplated by this statute. A notice which will be sufficient to release a surety from a fixed legal liability should be clear and explicit, and should amount to a demand that the

creditor commence and prosecute legal proceedings against the principal debtor. The alleged notice to appellant is not peremptory in form, and it contains no requirement that the creditor commence and prosecute legal proceedings against the principal debtor, and there is nothing in the letter from which the debtor could reasonably infer that the indorser intended to avail himself of this statute to be released from liability in the event legal proceedings were not begun. On the contrary, appellee denied all liability on the note in the very letter which he now pleads as a notice to appellant to begin legal proceedings or otherwise forfeit all his rights under the contract against the appellee. This alleged notice is merely a suggestion to the creditor that he proceed against the property, and a suggestion that he take the matter up direct with the makers, and that, if he would do so, the matter would probably be satisfactorily adjusted by them.

We have not found, and counsel have not brought to our attention, any case in which this court has passed upon the sufficiency of a notice under this statute, but the courts of many other states have considered the requisites of a notice that will be sufficient to release a surety under statutes with the same or similar provisions as those of our statute. In *Benge's Adm'r* v. *Eversole,* 156 Ky. 131, 160 S. W. 911, the supreme court of Kentucky said:

"The requisites of a notice that will be sufficient to release a surety are given as follows in 32 Cyc., 104; 'Notice must be clear and explicit, and not ambiguous; and the burden is on the surety to show its nature and terms. If the statute indicates the terms to be used in the notice, a substantial compliance therewith is essential. The notice must amount to a command; it is not sufficient to express a hope, a wish, or a desire; nor will it be a sufficient compliance for the surety to give a hint; to make a request; to urge; to suggest; to advise; or to state that the surety refuses to remain liable, or that he will not pay except under compulsion. The notice must be in effect a demand to sue, and be more than instructions to dun the principal.'"

In *Edmonson* v. *Potts' Adm'r,* 111 Va. 79, 68 S. E. 254,
21 Ann. Cas. 1365, the supreme court of Virginia had un-
der consideration a statute of that state which provides
that the surety or indorsers may give notice to the creditor
"forthwith to institute suit," and, if the creditor fails to
do so within a reasonable time, his rights against the
surety are forfeited, and in that case the court said:

‵ "Unless the letters relied on as giving notice contained
such a requirement to sue, the provisions of section 2890
of the Code were not complied with. That section is very
stringent in its terms. The effect of failure to institute
suit against every party to such contract who resides, in
this state and is not insolvent, after notice, is an absolute
forfeiture of all claims against every surety upon the con-
tract. To the surety giving the notice it is an absolute
extinguishment of the debt. Code, chapter 2891. *Davis,
Adm'r,* v. *Snead,* 33 Gratt, 705, 708, 709. Before the credi-
tor should be held to have forfeited all his rights under the
contract against all the sureties for a failure to forthwith
institute suit upon the contract, it ought clearly to ap-
pear that the notice relied on to have that effect required
suit forthwith to be instituted on the note"—citing many
authorities.

In *Moormann* v. *Voss,* 77 Ohio St. 270, 83 N. E. 76, the
supreme court of Ohio had under consideration a similar
statute, and after reviewing a number of authorities the
court said:

"In *Baker* v. *Kellogg,* 29 Ohio St. 665, this court said:
'In view of the fact that the statute provides for the re-
lease of a party from a fixed legal liability—from the
payment of a debt which he justly owes—its requirement
should be at least substantially, if not strictly and lit-
erally complied with.' In *Clark* v. *Osborn,* 41 Ohio St. 36,
the court, speaking of this statute, says.: 'The statute, in
a sense, is a part of a contract. The suretyship is ac-
cepted with knowledge of its terms. It gives rights to
both parties. The right of the creditor is to disregard with
impunity any notice not in strict conformity to its terms.

This is his privilege, and concerns him alone, and is un-affected by considerations of public policy.' These authorities alone, upon the conceded or undisputed facts, are, we think, decisive of the present case."

In Brandt on Suretyship, etc. (2d Ed.), section 263, it is said: "A notice to the creditor to sue, which will discharge the surety if not complied with, should be so clear and distinct, that the meaning of the surety can be at once apprehended without explanation or argument."

And in *Bowling* v. *Chambers*, 20 Colo. App. 113, 77 Pac. 16, the court stated the requirements of the notice in the following language: "The request or notice must be clear and explicit, not liable to misapprehension or misunderstanding and must be a positive direction to sue."

In support of his contention the appellee relies on the case of *Iliff* v. *Weymouth*, 40 Ohio St. 101, but we do not think that case is in conflict with the cases herein cited, but, on the contrary, we think it supports the conclusion that we have reached that the notice given by appellee was insufficient. In that case the court had under consideration a notice reading as follows:

"To Gregory Weymouth: You are hereby required at once to proceed and collect the note you hold dated the 17th of April, 1872, for one hundred and seventy-eight dollars and fifty cents, upon which I am surety, and James Satterfield is principal; that I will stand no longer.

Wesley Iliff."

In passing upon the sufficiency of this notice the court said:

"The notice given by him was peremptory, unconditional and easily understood. It 'required' the payee and owner of the note to proceed and collect, and left it not to his option. He was to act without delay—'at once' or forthwith. He was required to 'proceed,' or, as the word has been defined, 'to commence and carry on a legal process.' When required to 'collect,' the adoption of the commonly known and most effective means of enforcing collection—the commencement of suit—was neces-

sarily implied. The determined language of the surety, 'I will stand no longer,' taken in connection with the rest of the notice, was suggestive to the creditor that the surety would expect him to resort at once to the best mode of discharging him from liability as surety on the note, to-wit, the commencement of an action forthwith, which would enforce payment of the note by the principal debtor."

The next contention is that the appellee was released from liability as an indorser by reason of the fact that the appellant, by agreement with the principal debtors, extended the time for the payment of the note, and, consequently, that the peremptory instruction in his favor was correct.

That a person secondarily liable on a promissory note will be discharged by any agreement binding upon the holders to extend the time of payment or to postpone the holder's right to enforce the instrument, unless made with the assent of the person secondarily liable, has been held by this court in an unbroken line of decisions beginning in the early judicial history of the state, and this doctrine is crystallized in section 2698 of Hemingway's Code, which reads as follows:

"A person secondarily liable on the instrument is discharged: . . . By any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

The nature of an agreement that will operate as a discharge of the person secondarily liable has been repeatedly stated by this court, and in the case of *Newell et al.* v. *Hamer et al.*, 4 How. 684, 35 Am. Dec. 415, it was said:

"There must be a positive and binding agreement; and for this purpose it must be based upon some new and valuable consideration, which is sufficient to tie up the creditor, and prevent him from asserting any remedy during the time for which the indulgence has been given. This

is settled in nearly all the cases which have just been referred to; and has been so decided in every case when the question has been directly presented for the consideration of the court.   This interferes with some of the rights of the surety, and cannot prevent him from a resort to any prescribed remedy.   He may arrest the indulgence so given by a demand upon the creditor to sue, after which it can be continued only at the risk of the creditor."

In *Johnson* v. *Planters' Bank,* 4 Smedes & M. 165, 43 Am. Dec. 480, it is said:

"The rule is thus strongly stated by Theobald on Principal and Surety, p. 80: 'Forbearance or mere passiveness for any length of time, on the part of the creditor towards the debtor, will not discharge the surety, because until required to sue by the surety, the creditor is under no obligation to do so.'   There must be a contract between the creditor and principal debtor, so as to prevent the surety from having the same remedy against the principal as he might have had upon the original contract."

In *Wadlington* v. *Gary,* 7 Smedes & M. 522, it is said: "There is no doubt but that time was granted to the principal.   But mere indulgence does not release a surety. There must be a valid agreement for indulgence, founded upon a sufficient consideration—such an agreement as can be enforced in a court of justice."

In *Wright* v. *Watt,* 52 Miss. 634, Chief Justice SIMRALL announced the rule in the following language:

"Indulgence or nonaction, though in the meantime the principal should become insolvent, unaccompanied with any act of the creditor whereby the hazard is increased, will not discharge the surety. . . .   But if indulgence is granted for a definite time, pursuant to an agreement supported by a valuable consideration, so as to tie up the hands of the creditor, and the surety does not consent to such an arrangement between the creditor and the principal debtor, he will be exonerated from liability."

In *Miller, Sheriff, et al.* v. *Lewis, et al.,* 103 Miss. 598, 60 So. 654, the court, recognizing the same principle, said:

"In the present case, it seems clear that an extension of time was given to the principal for a sufficient consideration, consisting of the execution and delivery of the deed of trust on property, securing the amount of the indebtedness shown in the decree, that this extension was for a definite period, and that, by reason of the execution, delivery, and acceptance of the deed of trust, and the granting of an extension of time for a definite period to the principal, the sureties, the appellees herein, are released and discharged."

From these cases, as well as many others that might be cited, it is clear that an agreement to extend the time of payment which will release an indorser must be a positive, binding agreement, supported by a new and valuable consideration, and that mere indulgence or forbearance granted to the debtor does not release the surety; or, in other words, in order to effect the release of the surety by an agreement to extend the time of payment, the creditor must so tie his hands under the new agreement as to preclude himself from enforcing the old contract during the period covered by the extension.

In the case at bar, the extension which is relied upon as a release of the indorser is evidenced solely by the letter of the appellant to the principal debtor, which is dated August 27, 1920, and which is hereinbefore set out in full. There is no evidence whatever in this record that any consideration was either promised or paid for this extension, and the burden was upon the appellee to show a positive and binding agreement based upon some new and valuable consideration, which was sufficient to preclude the appellant from enforcing the note during the period covered by the extension. He has failed to meet this burden. We think the letter relied upon merely shows an indulgence to the makers of the note, granted at their request, and without consideration, which the creditor was at liberty to withdraw at will.

In *Thompson* v. *Wynne,* 127 Miss. 773, 90 So. 482, this court held: "Where the payee in a note secured by a deed

of trust on real estate, as a mere matter of grace, without any new or further consideration, at the request of a payor therein, extends the time of payment beyond the due date of said note, such agreement of extension is not binding on the payee; therefore, notwithstanding same, the payee may proceed to foreclose such deed of trust before the expiration of such extended date of payment."

It follows from the views herein expressed that it was error to grant the peremptory instruction requested by the appellee, and that the peremptory instruction requested by appellant should have been granted.

*Reversed and judgment here for the appellant.*