### GLEASON v. McDONALD et al.

#### No. 7811.

Circuit Court of Appeals, Sixth Circuit.

May 9, 1939.

Clayton F. Jennings, of Lansing, Mich. (Shields, Ballard, Jennings & Taber, Edmund C. Shields, Byron L. Ballard, and Clayton F. Jennings, all of Lansing, Mich., on the brief), for appellant.

Lewis Daniels, of Detroit, Mich. (Lewis Daniels, of Detroit, Mich., on the brief), for appellees.

Before SIMONS, ALLEN, and ARANT, Circuit Judges.

ARANT, Circuit Judge.

The plaintiff, as receiver of the Capital National Bank of Lansing, Michigan, brought action against the defendants, accommodation indorsers of a promissory note executed by Ernest Elliott, on July 7, 1933, in which he promised to pay $1,700 to the order of the Bank twenty-eight days after date. The defendants, who were business associates of Elliott, waived demand of payment, notice of non-payment, protest and notice of protest.

The defendants alleged that the receiver had entered into agreements with Elliott to extend the time of payment and contended that their obligations as indorsers were discharged in consequence. When the plaintiff rested, the Court, upon motion, directed a verdict in favor of the defendants, which action is the error assigned.

It is clear from the record that Elliott was having financial difficulties when the note matured, as well as subsequently, but that the receiver was trying to collect the note from him and apparently had some expectation that he would ultimately be able to do so. Apparently with this end in view, there was a discussion between the receiver and Elliott, in 1934, that eventuated in an understanding—referred to in the record as a "program"—that Elliott would pay $50 a month, beginning in September, 1934. Three such payments, together with all accrued interest, were made in September, October and November, 1934. Four other much smaller payments had followed when another discussion took place, in November, 1935, that eventuated in a second "program" under which Elliott was to pay $25 a month, beginning January 1, 1936. However, no payments were ever made pursuant to this understanding. Elliott was adjudicated a bankrupt on May 14, 1936, and is not a party to this suit.

These "programs," plus a promise claimed to be implied from an alleged advance payment of interest, constitute the extensions of time relied upon by the defendants.

If there had been payment of interest in advance by the maker of the note, a promise by the receiver not to proceed against him during the period for which interest had been paid would be implied. Since the promise thus implied would have been supported by consideration, the receiver would have been bound by it and the indorsers in consequence discharged. Gard-

ner v. Gardner, 23 S.C. 588; Bank of British Columbia v. Jeffs, 18 Wash. 135, 51 P. 348, 63 Am.St.Rep. 875; Bedford v. Kelley, 173 Mich. 492, 139 N.W. 250, Ann. Cas.1914D, 848; People's Bank v. Pearsons, 30 Vt. 711. But an examination of the notations of credits indorsed upon the note discloses that none of the thirteen payments for interest exceeded the amount of interest then due. In consequence, the defendants' claims that they are discharged must rest upon the so-called "programs."

That the receiver, or one Westfall for him, discussed with Elliott a plan for the liquidation of his indebtedness to the bank is admitted. It is not claimed that there was an express promise that no steps would be taken to collect the note if payments were made in accordance with the "programs," and Westfall, who alone testified as to this matter, stated that no such promise was made.

But defendants argue that the receiver's approval of the "programs" for monthly payments implies a promise not to sue as long as payments are made in accordance therewith. If this be granted, the conclusion that the defendants are discharged does not follow unless there is a consideration that makes the promise thus implied binding. Allen v. O'Donald, C.C., 28 F. 17; Staib v. German Ins. Bank, 179 Ky. 118, 200 S.W. 322; Shayler v. Giddins, 122 Mich. 659, 81 N.W. 552. It is only when the obligee's promise to forbear collection obligates or binds him not to proceed against the principal debtor that a surety is discharged. Graham v. Pepple, 132 Miss. 612, 97 So. 180, 30 A.L.R. 1278. Only then is the surety's right of subrogation impaired; only then is he prevented from paying the creditor and immediately proceeding against the principal debtor to obtain reimbursement. Allen v. O'Donald, C.C., 28 F. 17; Daviess County Bank & Trust Co. v. Wright, 129 Ky. 21, 110 S.W. 361, 17 L.R.A.,N.S., 1122.

The efficacy of the "programs" relied upon by the defendants as discharges must be tested by this requirement.

Assuming that the receiver did promise that no suit would be brought as long as payments were made in accordance with the "programs," was there such consideration therefor as made his promise binding? The promise of the maker thus to pay the principal with interest at 6%, the rate provided in the note, without more, would be

insufficient consideration, because he was already obligated to that extent. It is well settled that a debtor's promise to pay only what he is already obligated to pay is insufficient to bind the creditor to his promise to stay his hand. Foakes v. Beer, L. R. 9 App.Cas. 605; Shayler v. Giddins, 122 Mich. 659, 81 N.W. 552.

If, however, the maker, in addition, surrenders the power a debtor normally has to stop the running of interest whenever he wills by paying his creditor, another conclusion follows, for the debtor then surrenders something of value in the eyes of the law in excess of his obligation. The creditor also obtains the advantage of having his investment placed for an additional and definite period of time after maturity to which he was not entitled in consequence of the debtor's original undertaking. McComb v. Kittridge, 14 Ohio 348. Whether such detriments and benefits were contemplated by the parties to this note must be determined by reference to the language they used when the so-called "programs" were made. As already stated, Westfall testified that no promise to forbear collection was made. The absence of such a promise is inconsistent with the existence of a purpose or plan on the part of the bank to acquire a right to have its investment continue at 6% until such time as it was liquidated at the monthly rate mentioned in the "programs." The facts that the bank was in liquidation and the debtor in financial straits suggest that the acquirement of a legal right to a prolongation of investment was not the purpose of the discussions that eventuated in the so-called "programs."

Unless, therefore, what the receiver did was, notwithstanding the absence of such a purpose on his part, reasonably understood by Elliott to be an offer of a bargain not to sue him in return for his agreement not to pay sooner than the "programs" provided, there is no such binding agreement to extend the time for payment as discharges the defendants. We search the record in vain for evidence of any fact that would justify an understanding by Elliott that he was being bargained with to surrender for any period of time his legal power to pay his debt and by so doing terminate his obligation to pay further interest, a power that the record clearly shows he was at no time able to exercise, which fact was well known to the receiver. Indeed, defendants have admitted that Elliott's acknowledged inability to pay led to the discussions with him that eventuated in the "programs" relied upon as discharges. We view these "programs" as no more than endeavors by the receiver to procure payment as rapidly as possible without resort to legal proceedings.

We deem it unnecessary to consider the argument advanced by the plaintiff that the receiver had no power to contract with Elliott to extend the time for the payment of his note.

We conclude that the trial court erred in directing a verdict for the defendant. Judgment reversed and the case remanded for a new trial.